Nancy C. HICKMAN, Plaintiff-Appellant,

v.

VALLEY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION et al., Defendants-Appellees.

No. 79-3226.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1980.

Decided April 23, 1980.

Arthur Wilkowski, Wilkowski, Bloom & Simko, Toledo, Ohio, for plaintiff-appellant.

Arthur M. Ney, Jr., Cincinnati, Ohio, for Valley Local.

John C. Burkholder, Columbus, Ohio, for Crabtree, Gahm, Hawk, Mowery and Wortman.

James M. Moore, Lindhorst & Dreidame, Cincinatti, Ohio, for Young and Chestnut.

Before MERRITT, BOYCE F. MARTIN, JR. and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The Valley Local School District Board of Education ("Board") decided not to renew Nancy Hickman's teaching contract for the 1976–77 academic year. The renewal of her contract would have given her tenure under Ohio law, Ohio Rev. Code § 3319.11. Hickman filed suit in federal district court alleging that her contract had not been renewed because of her union activities. The district court, after a nonjury trial, entered judgment for defendants, holding that Hickman would have been dismissed even in the absence of her union activities. Because we hold that the district court erred in its application of the test in *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), we reverse.

## I.

Hickman is a certified elementary school teacher. She had taught a first grade class in the Valley Local Schools for 3½ years when the Board decided not to renew her contract. Before coming to the Valley Local Schools, she had taught elementary classes for nine years in other school districts.

The defendants are the Board; the individual Board members; James Young, the Superintendent of Valley Local Schools; and Robert Chestnut, Principal of Valley Local Elementary School where Hickman taught. The Board members and Young are sued in their official and individual capacities. Chestnut is sued only in his official capacity.

Hickman was very active in the teachers' union. In 1973–74, her first full year of teaching in the Valley Local Schools, Hickman was a representative on the union's negotiating team. The first collective agreement was negotiated at this time. In 1974–75, she served as Vice President and the following year she served as President. Hickman published the union newsletter in these three years.

A number of her activities irritated Young and Chestnut. For example, Hickman took a complaint about an outbreak of scabies directly to the Board, bypassing Young and Chestnut. She removed a book on Board policies from Chestnut's office and gave it to the school nurse, who wanted information on how to enlist the aid of other school personnel in fighting the scabies outbreak. Chestnut complained. Hickman won the local PTA's support on a bill pending in the Ohio legislature that would give public employees a collective bargaining bill of rights. Chestnut disapproved. Hickman processed and won the first grievance. She bypassed Young and Chestnut on another teacher's salary dispute and won. She published a union newsletter that reprinted a slogan of the National Education Association: "celebrate the bicentennial—process 200 grievances this year."

In 1975, Chestnut recommended to Young that the Board not renew Hickman's contract. However, Young recommended renewal to the Board and her contract was renewed. In 1976, Young agreed with Chestnut and recommended nonrenewal. The Board accepted Young's unfavorable recommendation. Three Board members voted against renewal solely on the basis of Young's recommendation. Another mem-

ber voted for dismissal because of his personal knowledge of a "personality conflict" between Chestnut and Hickman. The fifth member did not vote.

Young based his adverse recommendation on the unfavorable evaluation of Hickman's teaching by Chestnut, after he observed her in the classroom for 15–30 minutes once or twice, and on a series of minor rules infractions documented by Chestnut.

Chestnut evaluated Hickman in three academic years. He used forms listing a number of categories and providing a rating from 1 (highest) to 5. The first year she received excellent ratings. The second year, 1974–75, showed excellent marks for teaching, but a sharp drop in the "in the school" evaluation. For example, her grade for intra-school relationships plummeted from 1 to 5, and her rating for professional ethics from 3 to 5. The evaluation advised Hickman to be more cooperative and to reduce her activities outside the classroom. Chestnut noted that he hoped his problems with Hickman could be reconciled.

Chestnut began in November, 1975 to "document" a case for Hickman's nonrenewal. His final list included a number of complaints about Hickman, such as one instance of allegedly improper playground supervision, guiding the building inspectors on a tour, calling in the County Supervisor on the teacher's salary dispute, taking the missing policy book, and refusing to meet with him in conference without another teacher present.

The 1975–76 evaluation showed a decline in several areas of teaching. The ratings for "intra-school relationships" and "professional ethics" remained at 5. Chestnut's comments recommended:

[less] talking to the teachers in hallway during class time—better cooperation with administration—less tearing down and more building up—re-evaluate her philosophy and purpose for being at school—[she] has intimidated teachers not joining her association—controls and argues conversations with those who do not agree with her—tries to be principal and teacher and president of the VTA [union] at the same time.

Chestnut testified that he recommended nonrenewal in 1975 because of a decline in Hickman's ratings for "in the school professional" areas. Chestnut based his unfavorable recommendation in 1976 on a decline in classroom performance, poor ratings in intra-school relationships and professional ethics, and too many responsibilities outside of the classroom.

## II.

The Supreme Court in *Mt. Healthy City Board of Education v. Doyle, supra,* stated the principles which must guide our resolution of this appeal:

Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct. (Footnote deleted).

429 U.S. at 287, 97 S.Ct. at 576.

Applying these principles, the district court declared that Hickman had proven a *prima facie* case of dismissal predicated on constitutionally protected activities, such as the scabies incident, her work with the PTA on legislation, and representing a teacher's grievances. The district court then considered defendants' evidence and held that Hickman would have been dismissed even in the absence of her union activities, because of the personality conflict between Chestnut and Hickman.

Hickman argues on appeal that the "personality conflict" and declining performance evaluation cannot serve as reasons to justify her dismissal, because they are inextricably linked to the antagonism generated from her union activities. She also con-

tends that the court must examine the basis for the recommendations of Young and Chestnut to the Board, since the Board acted in reliance on those recommendations. Agreeing with both arguments, we hold that the district court erred in its application of the *Mt. Healthy* test.

The Supreme Court in *Mt. Healthy* fashioned a "test of causation which distinguishes between a result caused by a constitutional violation and one not so caused." 429 U.S. at 286, 97 S.Ct. at 575. The Court reasoned that "[t]he constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." *Id.* at 285–86, 97 S.Ct. at 575. Our inquiry then is whether a cause of Hickman's dismissal was the administrators' disapproval of some of her union activities.

■ In our view, the facts compel the conclusion that Hickman would not have been dismissed but for her union activities. The alleged personality conflict between Hickman and Chestnut germinated from her union activities. To allow any rancorous feelings engendered in this manner to justify a dismissal would decimate constitutional protections. Moreover, there is no evidence, and the district court did not find, that Hickman's conduct had in any way impeded or disrupted the operation of the school. *Pickering v. Board of Education*, 391 U.S. 563, 572–73, 88 S.Ct. 1731, 1736–37, 20 L.Ed.2d 811 (1968). Nor is there a question here of maintaining discipline by immediate superiors or coworker harmony. *Id.* at 569–70, 88 S.Ct. at 1735. Many teachers signed petitions urging the reinstatement of Hickman. The cases cited by defendants involve much more egregious conduct than that of Hickman, such as direct public criticism of one's immediate supervisor or arousing intense animosity among coworkers. *E. g., Sprague v. Fitzpatrick*, 546 F.2d 560 (3d Cir. 1976); *Hoch-*

*stadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222 (1st Cir. 1976). Therefore, we conclude that the "personality conflict" is a consequence of Hickman's protected conduct and cannot serve to rebut her *prima facie* case.

■ The decline in Hickman's teaching evaluations is also traceable to her union activities. The decline was manifested first and most dramatically in the ratings on her intra-school relationships and professional conduct. It is hardly surprising that the principal, with whom Hickman had done battle on numerous occasions as union representative, would grade her so poorly in these categories. In 1976, after Chestnut decided to "document" Hickman for nonrenewal, it is to be expected that her evaluation for teaching performance would decline.[1]

Most importantly, many adverse comments on the evaluations concern criticism of her union activities, providing direct evidence connecting the low evaluations with Chestnut's disapproval of her union activities. Therefore, the decline in her teaching evaluations is tainted by her supervisors' disapproval of her protected conduct and cannot rebut the *prima facie* case.

In sum, the reasons proffered by defendants to justify Hickman's nonrenewal instead reinforce the conclusion that she was dismissed because of her protected activities. Both the "personality conflict" and the decline in evaluations started, grew and resulted from the administrators' disapproval of some of her union activities. Our ruling is not premised on any finding of bad faith or retaliatory motive on the part of defendants. Rather, the evidence shows the defendants' two reasons for nonrenewal on their face are closely linked with, and colored by, their reactions to Hickman's protected activities. Therefore, we conclude that the defendants did not prove

---

1. Still, she was rated highly, receiving a "1" for knowledge of subject; and "2" for ability in planning and organizing, skill in questioning and explaining, and ability to secure pupil participation. Her lower marks for teaching were in areas in which Chestnut's "rose-colored" lenses could more easily tint the evaluation: "3" in pupil rapport and classroom control and "4" in classroom atmosphere. Her one other bad mark was for overuse of materials, a fault that could easily be corrected.

that the nonrenewal would have occurred even in the absence of such protected conduct.

■ The Board members decided not to renew Hickman's contract on the basis of Young's recommendation, who in turn relied on Chestnut. The evidence does not demonstrate that the Board was insulated from the principal's or superintendent's reasoning or that the Board reached its decision on the basis of independent, intervening factors. Where this line of causation exists, and the principal or superintendent predicated their recommendations on constitutionally impermissible reasons, these reasons become the bases of the decision by the Board members. Therefore, we hold that defendants dismissed Hickman for constitutionally impermissible reasons.

### III.

■ The district court found against the individual liability of the Board members and Young. We affirm.

The Board members are entitled to immunity from liability unless they acted with malice to deprive Hickman of her constitutional rights or they knew or reasonably should have known that their action would violate Hickman's constitutional rights. *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). Though the district court did not make findings of fact on the immunity of the Board members, we hold them immune, because there is no evidence in the record which could strip any Board member of immunity. In fact, two Board members are members of labor unions and favor the teachers' collective bargaining rights. Moreover, all the evidence indicated that the relationship between the union and the Board was amicable.

■ The district court was not clearly erroneous in finding that Young acted in good faith. Therefore we affirm his immunity from liability. Though Hickman and several other witnesses testified that Young ordered Chestnut to "document" Hickman as a result of her union activities, the district court preferred to credit the testimony of Young and Chestnut that no such direct order had been given. Young and Chestnut testified that Young had told all the principals in general terms that they should have solid proof to support any recommendation of nonrenewal. Since the finding of good faith depends on the witnesses' credibility, we defer to the findings of the district court. We also note that Young was functioning within the scope of his official duties in recommending non-renewal. Ohio Rev. Code §§ 3319.07, 3319.11.

■ We affirm the judgment on Young solely on the basis of immunity. In other respects, the district court erred as a matter of law. Because Young recommended non-renewal to the Board and the majority of the Board members acted on the basis of his recommendation, there is a sufficient causal link between Young's actions and Hickman's injury to warrant Young's liability. Consequently, *Sullivan v. Meade Independent School District No. 101*, 530 F.2d 799 (8th Cir. 1976), on which the district court relied, is distinguishable. Also, we believe that the district court erred in declaring that the constitutional rights of Hickman were not clearly established. School administrators must know that they cannot discharge teachers because of their disapproval of the teachers' union activities. This much is clear, though the test in *Pickering v. Board of Education* requires the court at times to weigh various factors in order to determine the scope of First Amendment protections.

### IV.

Upon remand, the district court shall order the defendants to offer Hickman reinstatement with a continuing contract, Ohio Rev. Code § 3319.11, shall order defendants to compensate Hickman for her lost earnings, and shall consider the appropriateness of an award of attorneys' fees, and, if appropriate, the amount of such an award.

The costs of this appeal shall be borne by defendants.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.