Stanley Herbert NATHANSON,
Appellant,

v.

UNITED STATES of America; Allan Campbell, Individually and in his capacity as Executive Director of the United States Civil Service Commission; Clifford Alexander, Jr., Individually and in his official capacity as Secretary of the United States Army; Lieut. Gen. John W. Morris, Individually and in his official capacity as Chief Engineer, U.S. Army Corps of Engineers; Maj. Gen. Richard L. Harris, Individually and in his official capacity as North Central Division Engineer, U.S. Army Corps of Engineers; Col. Forrest T. Gay, III, Individually and in his official capacity as St. Paul District Engineer, U.S. Army Corps of Engineers; William Goetz, Individually and in his official capacity as Chief, Construction-Operations Division, St. Paul District, U.S. Army Corps of Engineers; William D. Parsons, Individually and in his official capacity as Chief, General Regulatory Branch, Construction-Operations Division, St. Paul District, U.S. Army Corps of Engineers, Appellees.

No. 82–1360.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1982.
Decided March 23, 1983.

Pepin, Dayton, Herman, Graham & Getts by Philip W. Getts, Minneapolis, Minn., for appellant.

Michael H. Ferring, Counsel, Corps of Engineers, James M. Rosenbaum, U.S. Atty. by John M. Lee, Asst. U.S. Atty., Minneapolis, Minn., for defendants.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

LAY, Chief Judge.

Stanley H. Nathanson appeals from adverse findings and judgment made by the district court, the Honorable Donald D. Alsop presiding, dismissing his complaint relating to his termination of employment with the United States Army Corps of Engineers. In 1977 Nathanson was a probationary employee working as an applications review specialist with the Corps. He alleged that he was unlawfully terminated due to his expression of opinion and speech in violation of the first amendment. Judge Alsop found that his speech was not protected under the first amendment and that even if it were, under the guidelines of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), it was not a substantial and motivating factor relating to his discharge. On appeal Nathanson asserts that the government failed to carry its burden of proof that his conduct was disruptive to the efficiency and work of the Corps, and that the court's findings that he was discharged for reasons other than his speech were clearly erroneous. We must respectfully disagree; we affirm the judgment of the trial court.

Nathanson's position as an applications review specialist required him to review and evaluate applications for permits for construction in the navigable waters of the United States pursuant to section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403 (1976), and permits for the dredged and fill material in the waters of the United States pursuant to section 404 of the Federal Water Pollution Control Act, 33 U.S.C. § 1344 (1976). His duties included preparing public notices, securing comments, acquiring additional information, and recommending a final decision. He was supervised by Frank Mazurkiewicz, a chief applications review specialist, and by William Parsons, who was chief of the General Regulatory Branch of the Construction and Operations Division.

Nathanson asserts that his termination was based upon his expressions and views on environmental policy which violated his first amendment rights.[1]

1. On a prior appeal this court affirmed the dismissal of due process claims on a grant of summary judgment in favor of the government. We, however, remanded the case for plenary

The government asserted at trial that Nathanson was discharged because of poor performance of his duties. On April 28, 1978, Nathanson received a letter signed by Parsons stating that his employment as an applications review specialist would be terminated as of the close of business on May 12, 1978. The letter stated:

This action is being taken as a result of your duty performance. It is my judgment that you have failed to demonstrate the necessary qualifications for successful performance in this position. Specifically, you have shown an inability to accept guidance and direction from supervisory personnel, you have failed to properly follow administrative guidelines and operating procedures, and you have demonstrated poor judgment in coordinating your activities with other State and Federal agencies.

According to the record Nathanson received regular reviews of his performance from his supervisor, Mazurkiewicz. During these discussions, Mazurkiewicz counseled him about a number of problem areas relative to his performance. These problems included failing to follow branch policy regarding handling telephone inquiries from the public; writing illegibly; engaging in lengthy arguments with other employees; and use of poor grammar. Mazurkiewicz indicated that Nathanson's writing required considerable reworking, that he required more than average supervision, and that his work needed much improvement. Mazurkiewicz further testified that Nathanson's arguments and discussions with Parsons were disruptive to the branch operations.

Nathanson asserts that these reasons were pretextual and that they constitute a post hoc determination camouflaging the true reason. He claims that his regulatory and environmental philosophy differed sharply from that of Parsons.

There were four primary disputes between Nathanson and Parsons which were focused upon at trial. The parties view these disputes with different approaches. Since we feel the district court's findings turn essentially on its review of these disputes, we summarize those findings: (1) Nathanson told Parsons that it would be illegal to continue to process an application by the City of Superior, Wisconsin for a permit to deposit dredged and fill materials in St. Louis Bay in connection with the construction of a marina on Barkers Island; (2) Nathanson told Parsons he would not process an application by the Metropolitan Airports Commission for the deposit of fill and riprap in Snelling Lake in connection with the construction of storm water holding ponds at the Minneapolis-St. Paul International Airport without a written directive from Parsons requiring a conditioned permit; (3) Nathanson refused to list activities of the Minnehaha Creek Watershed District in connection with a project for the construction of canoe launching ramps and related facilities which were still subject to jurisdiction under section 404 of the Clean Water Act, but rather indicated that there was simply no jurisdiction unless water quality impacts were shown to exist; and (4) Nathanson told Parsons that it was illegal and unethical for employees of the Corps of Engineers to recommend or suggest modification of the Wilkins-Ottertail Joint County Ditch Number Two project for the purpose of preventing the Corps of Engineers from exercising jurisdiction over the project.

Nathanson's argument is that it was his "ideas" not his behavior that led to his dismissal. The district court found otherwise. The district court concluded: (1) Nathanson's expression of his views concerning the proper method of processing these three applications hindered his ability to carry out his functions as an applications review specialist and the overall operations of the Corps of Engineers; (2) Nathanson's speech did not play a substantial role in the defendants' decision to discharge him; (3) Nathanson would have been discharged

trial on Nathanson's first amendment claim. *Nathanson v. United States,* 630 F.2d 1260, 1265 (8th Cir.1980).

even if he had not expressed his opinions concerning the methods of processing the Barkers Island Project, the Metropolitan Airports Commission project, the Minnehaha Creek project, and the Wilkins-Ottertail Joint County Ditch Number Two project.

Nathanson now asserts there is not sufficient evidence to support the trial court's conclusions. He asserts the court's findings are clearly erroneous. We disagree. As we have observed many times before, our standard of review does not allow us to substitute our own impressions for those of the district court. *E.g., Horner v. Mary Institute,* 613 F.2d 706, 713 (8th Cir.1980); *St. Louis Typographical Union No. 8 v. Herald Co.,* 402 F.2d 553, 557 (8th Cir.1968).

We, of course, cannot decide the case de novo. In reviewing the evidence and the court's findings we rely on standards in both *Pickering v. Board of Education,* 391 U.S. 563, 572–73, 88 S.Ct. 1731, 1736–37, 20 L.Ed.2d 811 (1968) and *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 284–87, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977).

Nathanson's views must be examined as "private expressions" as distinguished from public speech. Although the first amendment protects both forms of speech, the Supreme Court in *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), makes clear we confront a differing standard of review when dealing with private expression. The Court there stated:

> Although the First Amendment's protection of government employees extends to private as well as public expression, striking the *Pickering* balance in each context may involve different considerations. When a teacher speaks publicly, it is generally the *content* of his statements that must be assessed to determine whether they "in any way either impeded the teacher's proper performance of his daily duties in the classroom or . . . interfered with the regular operation of the schools generally." *Id.* [391 U.S.] at 572–573 [88 S.Ct. at 1736–37]. Private expression, however, may in some situations

bring additional factors to the *Pickering* calculus. When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered.

*Id.* at 415 n. 4, 99 S.Ct. at 696 n. 4.

Following *Givhan,* the court in *Key v. Rutherford,* 645 F.2d 880, 884–85 (10th Cir. 1981), remanded an action wherein a former police chief claimed the city violated his first amendment rights when his employment was terminated after he complained to the mayor about departmental grievances and limitations on his right to join a police officers' fraternal organization. The court emphasized that plaintiff's comments were directed to the mayor personally rather than to the public. The court found this was significant "because the *Pickering* test takes into account not only the content of the speech (whether it involves matters of public interest as opposed to purely personal concerns), but also the manner of expression (whether it is conveyed privately or to the public at large)." *Id.* at 884. Further, in *Mt. Healthy* the Court observed:

> The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

429 U.S. at 285–86, 97 S.Ct. at 575.

We find there was ample evidence for the district court to view Nathanson's argumentative discussions with his superiors as disruptive conduct threatening the efficiency of performance of his duties. On at least

three occasions processing of the applications for permits had to be referred to others within the office because of Nathanson's refusal to continue processing the applications. Whether Nathanson's views were right or wrong, Parsons responded to them as behavior that was deemed bordering on insubordination. We emphasize it was not the expression of his views that the district court found led to his dismissal. Parsons did not fire Nathanson because he was an environmentalist and disagreed with the policy of the office. True, the evidence allows Nathanson to argue as much; however, the district court is the finder of fact. The district court found that because Nathanson possessed such strong views he could not efficiently carry out his duties in processing the permits. The classic illustration to support this relates to the incident surrounding the application by the Metropolitan Airports Commission to perform work involving storm water treatment.

In connection with that application the United States Fish and Wildlife Service objected to issuance of the permit because the activity would require action by the Commission to satisfy section 6(f) of the Land and Water Conservation Fund Act. Parsons told Nathanson that the permit could be issued by the Corps upon condition that it would only be effective when the Commission had complied with section 6(f). Parsons' directive was consistent with 33 C.F.R. § 325.5 (1982) which specifically provides that "Special conditions applicable to the specific activity will be included in the permit as necessary to protect the public interest." On two occasions Parsons directed Nathanson to proceed with the application and advise the Fish and Wildlife Service that the Corps intended to issue the permit with such a condition. Nathanson refused by indicating that it would be illegal to proceed in that manner and would be a violation of his oath of office. Nathanson demanded that Parsons put his directive in writing. Parsons refused and reassigned the file.

We agree that the institutional efficiency of the Corps was not threatened by the content of Nathanson's views. He had every right to express these views to his superiors. However, the manner, time, and place in which he expressed these views clearly inhibited his performance in processing permits directed by his superiors. Based upon this record we find the district court did not err in finding that his speech was not the substantial and motivating factor for his discharge. The district court's finding that Nathanson's views hindered his ability to carry out his functions as an applications review specialist and the overall operations of the Corps of Engineers are supported by the evidence and are not clearly erroneous.

Judgment affirmed.