774 F.2d 251
 39 Fair Empl.Prac.Cas. 1266,
38 Empl. Prac. Dec. P 35,609, 27 Ed. Law Rep. 1079
 Ruth Polk PATTERSON, Appellant,
v.
Paul MASEM, Superintendent of the Little Rock School
District, and Members of the Board of Education of
the Little Rock School District,
Individually and in their
Official Capacities,
Appellees.
 No. 84-2348.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 11, 1985.
Decided Sept. 27, 1985.
 
 John W. Walker, Little Rock, Ark., for appellant.
 G. Ross Smith, Little Rock, Ark., for appellees.
 Before ROSS and JOHN R. GIBSON, Circuit Judges, and COLLINSON,* Senior District Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Ruth Polk Patterson appeals from an adverse judgment on her claim that the Little Rock School District impermissibly refused to appoint her to the position of Supervisor of English and Social Studies either because of her race or in retaliation for her exercise of her first amendment rights. Essentially she argues that the district court,[1] which concluded that neither of these factors substantially affected the employment decision, erred as a matter of law and was clearly erroneous in its factual findings. We affirm.
 
 
 2
 Ruth Patterson, who is black, had been employed by the Little Rock School District at the time of this suit for approximately twenty-two years. Of these she served fourteen solely as a teacher, three as a teacher with additional administrative duties, and four as a full-time administrator. In addition to a bachelor's degree, Dr. Patterson held a master's degree in English and a doctorate in American studies; she also had numerous publications to her credit. At the time she applied for the position of Supervisor of English and Social Studies, she held the position of Supervisor of Minority Studies.
 
 
 3
 In the spring of the 1979-80 school year, as part of her duties, Patterson was sent by Superintendent Paul Masem to Central High, one of the schools in the district, to mediate a growing controversy over the student production of the Moss Hart-George Kaufman comedy "You Can't Take It With You." Concern had been expressed that aspects of the casting and some language in the play might be racially offensive, and reports had been received that black students participating in the production were being harassed. The drama teacher agreed to expunge certain racially derogatory language, but left the decision whether to recast the play to eliminate what might be perceived as demeaning racial stereotypes to student vote. No recasting was done. Dr. Patterson viewed this compromise as inadequate and recommended to Superintendent Masem that the play be cancelled. Masem, in a later letter describing the incident, characterized her suggestion as neither "appropriate nor in good faith" and as going beyond her "limited assignment" to "effect a compromise so that [the] play could go on." The play eventually was performed.
 
 
 4
 At the end of the school year Dr. Patterson formally applied for the position of Supervisor of English and Social Studies, which became vacant due to retirement. Masem and another administrator had indicated to her earlier that she was in line for the position, and Masem recommended her to the Board. When it became apparent that a majority of the Board opposed the appointment, however, Masem withdrew his recommendation of Dr. Patterson and recommended Marvin Zimmerman. Zimmerman, a white male, ultimately was selected. There is no question that Zimmerman, while he did not have a doctorate degree and had experience in only one of the two academic disciplines within the jurisdiction of the position, also met the minimum requirements for the position. The Board appointed Patterson Supervisor of Human Relations.
 
 
 5
 Dr. Patterson brought suit under various civil rights statutes (42 U.S.C. Secs. 1981, 1983, 2000e-2 (1982) ) alleging that she had been discriminated against because of her race and that the Board had impermissibly retaliated against her for her exercise of free speech rights. After a two-day hearing Circuit Judge Richard Arnold, sitting as a district judge, denied her motion for a preliminary injunction. Judge Arnold noted, however, that "[t]he Court is persuaded that the trier of facts on the merits of this case would probably find that race was a factor," and therefore ordered that Zimmerman be given only the title of "acting" supervisor pending the outcome of the trial. Hearing on Motion for Preliminary Injunction at 173, 180, Patterson v. Masem, No. LR-C-80-372 (E.D.Ark. Aug. 8, 1980). The case was then assigned to Judge Henry Woods who, after accepting the record from the previous hearing and taking additional evidence, rendered judgment against Patterson.[2]
 
 I.
 
 6
 The pattern of proof for suits alleging race discrimination in employment is well established. First, a plaintiff must establish a "prima facie case" by proving a set of facts sufficient to give rise to an inference of discrimination. Second, the defendant has the burden to articulate a legitimate nondiscriminatory reason for the employment decision. Third, if these initial burdens are satisfied, the plaintiff is granted an opportunity to show that the justifications offered are but pretexts to conceal the employer's improper motivation. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973); Kenyatta v. Bookey Packing Co., 649 F.2d 552, 554 (8th Cir.1981) (same pattern applies to suits brought under section 1981 as under Title VII). On review, however, we need not consider the record in this strict sequence. We may instead look directly to the ultimate factual issue of discrimination. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).
 
 
 7
 As an initial matter, Patterson urges that the district court, having accepted the testimony heard by Judge Arnold in the motion for preliminary injunction, must also accept Judge Arnold's "findings" that race was probably a factor in the Board's decision or at a minimum reject them only if they are clearly erroneous. This argument fails for two reasons. First, in general, findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits, University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). The haste with which preliminary injunction motions proceed and their limited purpose customarily require the relaxation of procedural safeguards and the introduction of less than all the material evidence. Id. at 395, 101 S.Ct. at 1834. Such lapses counsel against giving preclusive effect to the results of these proceedings. Second, even if the district court were to depart from the general rule, Judge Arnold's findings are not the type sufficient for a decision on the merits. His order explicitly acknowledges that a full airing of the facts is to follow. His findings were, by his own admission, only general impressions. Thus, the district court in this case properly accepted the testimony but undertook to make its own findings of fact. Hearing on Motion for Preliminary Injunction at 165, Patterson v. Masem, No. LR-C-80-372 (E.D.Ark. Aug. 8, 1980).
 
 
 8
 We also reject Patterson's contention that the school district, because of its history of discrimination, must prove by clear and convincing evidence, rather than by a mere preponderance, that race was not the motivating factor in the employment decision. The cases Patterson cites, e.g., Moore v. Board of Education, 448 F.2d 709 (8th Cir.1971), all involved reductions in teaching staff resulting from judicial orders dismantling the dual school systems in 1969. The evidence does not establish that current policies of the Little Rock School District require application of the higher standard.[3]
 
 
 9
 The district court found that race was not "a significant factor in the School Board's failure to select Dr. Patterson for the position of Supervisor of English and Social Studies. * * * [S]he was not selected for legitimate, non-discriminatory reasons." Patterson v. Masem, 594 F.Supp. 386, (E.D.Ark.1984). The court singled out among these reasons Board members' beliefs that Patterson was "abrasive, did not get along well with faculty and staff and was lacking in interpersonal and management skills." Id. at 394. The district court concluded that the Board's opinion was substantiated by ratings of the district's supervisors, based on evaluations by the various district principals. Dr. Patterson was rated last in interpersonal skills, assistance in program development and job implementation, and adequate feedback to principals. She was rated next to last in responsiveness to requests, knowledge of program or content areas, and ability to evaluate program or content areas. The district court found that these evaluations indicated Dr. Patterson's "performance in her previous supervisory position had left much to be desired" and "would alone have justified the board's passing over her."[4]
 
 
 10
 Dr. Patterson challenges these findings. First, she points to the history of segregation in the Little Rock School District, detailed in the Clark litigation, see Clark v. Board of Education, 705 F.2d 265, 266 n. 1 (8th Cir.1983) (listing prior decisions), as evidence of the district's discriminatory employment practices. She notes in particular this court's discussion of the vestiges of discrimination and the absence of blacks in such positions as secondary school principal or supervisor of an academic (as opposed to a vocational or federally funded) program. Id. at 271 & n. 9. A defendant's "general policy and practice with respect to minority employment" may be evidence that the reasons offered for an individual employment decision are pretextual. McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. at 1825; Easley v. Empire, Inc., 757 F.2d 923, 931 (8th Cir.1985).
 
 
 11
 Second, Dr. Patterson argues that the Board's departure from normal procedures is itself evidence of improper motivation. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). For example, the Board rarely refuses the recommendation of the superintendent. Moreover, the district's own vacancy listing required that the Supervisor of Human Relations, the position to which Patterson eventually was appointed, hold a master's degree in counseling or a related field, which Patterson did not. The vacancy listing also required "[e]vidence of strong inter-personal skills in dealing with students, staff, administrators, and parents"--the exact quality the Board found she lacked when it refused to appoint her Supervisor of English and Social Studies. See Plaintiff's Exhibit No. 6, Patterson v. Masem, 594 F.Supp. 386 (E.D.Ark.1984). Furthermore, Dr. Patterson claims, the Board's suggestion that it assigned her to the Human Relations position so that it could evaluate her managerial ability for another year is suspect in light of the fact that she has been an administrator for four years.
 
 
 12
 Third, while the evaluations emphasized by the district court ranked Patterson last or next-to-last among the eleven supervisors in each of the six categories, Dr. Patterson argues that her rankings do not establish that she is incompetent to perform in the new position; specifically, her lowest score was 3.46 (on a scale of 1 to 5 with 5 representing "excellent"), and in no category was she rated substantially below the next lowest supervisor. The Assistant Superintendent of Program Implementation, in a cover letter accompanying the evaluation results, called the district's group of supervisors "exceptionally competent and talented." Plaintiff's Exhibit No. 11, id. Both the Assistant Superintendent and Superintendent Masem testified that Dr. Patterson's work performance had been satisfactory and that they knew of no qualifications for the position of Supervisor of English and Social Studies that Dr. Patterson did not possess.
 
 
 13
 Finally, we recognize that the ratings given by the principals, like the Board members' opinions that Patterson lacked judgment and interpersonal skills, look to subjective factors. We have had occasion in the past to warn that use of such criteria must be closely scrutinized because of the opportunities for discriminatory abuse. Easley, 757 F.2d at 930. Dr. Patterson's perceived abrasiveness and the antagonism she allegedly induced among the teachers cannot be legitimate factors justifying the Board's employment decision to the extent that these reactions are the result of her peers' racism or their disagreement with her apparent activism regarding desegregation and civil rights. Cf. Hickman v. Valley Local School District Board of Education, 619 F.2d 606 (6th Cir.1980) (personality conflict and declining evaluations not reasons for dismissal when both were caused by principal's disapproval of and annoyance at teacher's protected union activities), cited with approval in Roberts v. Van Buren Public Schools, 731 F.2d 523, 526 n. 3 (8th Cir.1984).
 
 
 14
 Dr. Patterson's challenges to the findings are not insubstantial. Our review of the district court's findings as to the Board's motives, however, is governed by the "clearly erroneous" standard. Anderson v. City of Bessemer City, --- U.S. ----, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). This deferential standard applies whether the district court's findings are based on documentary evidence or credibility determinations or some combination of the two. The Supreme Court underscored the district court's paramount role in the determination of facts through the expertise that comes from experience. After the parties concentrate their energies and resources on persuading the trial judge, it is too much to require that they persuade three more judges at the appellate level. Anderson, 105 S.Ct. at 1512. "We may not duplicate the function of the district court by making our own determination of the facts and reversing if we believe we would have decided the case differently: 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " Craft v. Metromedia, Inc., 766 F.2d 1205, 1212 (8th Cir.1985) (quoting Anderson, 105 S.Ct. at 1512).
 
 
 15
 As in Anderson, here there were two permissible views of the evidence. The district court, however, carefully analyzed the evidence and made detailed findings concerning Dr. Patterson's role in the play controversy as well as the ratings and evaluations of her performance by district personnel and the assessment by the board members. It found that her part in the school play incident was a factor in her rejection "but not as important as Dr. Patterson believes." Her efforts to have the play cancelled precipitated a number of complaints to the school board from faculty members and parents. The court concluded that her inability to remain objective was a legitimate question for the Board to raise. It found that board members believed that she was abrasive and lacked interpersonal and management skills. It also found that the poor performance evaluations alone would have justified the Board's decision. The order set forth in its findings the memorandum of the superintendent to Dr. Patterson that in the play controversy she had gone beyond her charge to effect a compromise among the parties and assumed the lead in opposing its production. Although the comment was made with respect to the first amendment issue, the district court found "that Dr. Patterson was derelict in an official assignment given to her by the superintendent." With this foundation of specific findings, the district court determined that neither race nor sex was a significant factor in the Board's failure to select her. The court concluded the school district had "articulated legitimate nondiscriminatory reasons" for its employment decision while Patterson had "failed to prove that these reasons [were] pretextual and [had] failed to sustain her burden on the whole case of proving discrimination." Patterson, at 394. Under Anderson, "the district court's account of the evidence is plausible in light of the record viewed in its entirety." Anderson, 105 S.Ct. at 1512. We cannot conclude that the district court's findings in this respect are clearly erroneous.
 
 II.
 
 16
 To the degree that the Board's opinion of Patterson rested primarily on her handling of the play incident, Patterson argues that the Board's action constitutes impermissible retaliation for her exercise of her first amendment rights. The district court found that Patterson did not work toward a compromise among the parties at Central High, but instead "ultimately became the spokesperson for the protestors, who became progressively more intense in their protests." Patterson, at 389. The court further found that the Board's reaction to the incident was the result not of the position which she took, but of her inability to mediate effectively between the parties. Id. at 394.
 
 
 17
 The first amendment does not insulate all public employees' speech-related conduct from the scrutiny of the governmental employer. Instead, the first amendment requires that consideration be given to "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968). To be protected, an employee's speech first must address a matter of public concern, Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983); Roberts v. Van Buren Public Schools, 773 F.2d 949, 954 (8th Cir.1985); and, second, the interests of the employee and of the government as employer must be balanced. See Bowman v. Pulaski County Special School District, 723 F.2d 640, 644 (8th Cir.1983) (listing factors to be considered). We have held that a school district has the right to prescribe a curriculum and desired classroom methods and to expect teachers to follow such validly established dictates. Ahern v. Board of Education, 456 F.2d 399, 403-04 & n. 4 (8th Cir.1972); see also Kelleher v. Flawn, 761 F.2d 1079, 1084 (5th Cir.1985) (citing cases). Here a play was selected by the school district (or by the drama teacher, to whom such authority had been delegated); it was Dr. Patterson's duty to respect the district's choice. While her conduct did indeed address a matter of public concern, it also interfered with the proper performance of her job. E.g., Nathanson v. United States, 702 F.2d 162, 166 (8th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983). We cannot find that the district court erred in its conclusion that the incident could have raised questions regarding Dr. Patterson's willingness to follow her superiors' directives as to curriculum and as to whether "a person with Dr. Patterson's propensities toward censorship and bowdlerism should supervise the teaching of literature and history." Patterson, at 393. Thus, on balance, Dr. Patterson's objections to the play and the manner and context in which she pursued them cannot be characterized as protected speech.
 
 
 18
 We affirm the judgment of the district court against Patterson in all respects.
 
 
 
 *
 The HONORABLE WILLIAM R. COLLINSON, Senior United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 The trial of this case on the merits actually was delayed three years by various intervening motions, most of which are not relevant here. For example, motions for class certification and for consolidation with the Clark litigation concerning desegregation of the Little Rock School District (see Little Rock School Dist. v. Pulaski County Special School Dist. No. 1, 584 F.Supp. 328, 334-35 (E.D.Ark.1984) ), were denied, and those rulings are not challenged on appeal. Patterson does challenge the refusal of Judge Woods to recuse himself, arguing that recusal was required under 28 U.S.C. Sec. 455(b)(2) because Judge Woods' former law firm, during the time he was associated with the firm, represented parties that sought to intervene in and eventually participated as amicus curiae in the Clark litigation. We agree with Judge Woods that it follows from the denial of the consolidation motion that the "matter in controversy" here cannot be the same as in Clark and that the statutory language on recusal relied on by Patterson thus does not apply. No circumstances have been brought to our attention that would cause a reasonable person to question Judge Wood's ability to impartially decide Patterson's case
 
 
 [3]
 Dr. Patterson's argument that the school district was required to develop objective, nondiscriminatory criteria for its employment decisions similarly is limited to the context of teacher reductions resulting from consolidation of dual school systems. This is true even when desegregation otherwise is still in progress. Wright v. Houston Indep. School Dist., 569 F.2d 1383, 1384 (5th Cir.1978)
 
 
 [4]
 The district court also found that at least two of the Board members opposed Patterson's appointment as Supervisor of English and Social Studies at least in part because they felt she would not properly support the district's policy of grouping students by ability at the secondary level. Patterson, at 394