John GERMANN, Appellant,

v.

CITY OF KANSAS CITY, Hon. Richard Berkley, Robert Kipp, John Waas, Thomas Lewinsohn, Edward Wilson, Appellees.

No. 84–1261.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1985.

Decided Nov. 6, 1985.

Rehearing and Rehearing En Banc Denied Dec. 27, 1985.

Sandra C. Midkiff, Kansas City, Mo., for appellant.

Dan Jackson, Kansas City, Mo., for appellees.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

John Germann appeals from a final judgment entered in the District Court[1] for the Western District of Missouri in favor of the City of Kansas City, Missouri, Edward Wilson and John Waas. *Germann v. City of Kansas City*, 579 F.Supp. 180 (W.D.Mo. 1984). For reversal appellant argues that the district court erred in failing to find that appellees violated his federal constitutional and state statutory rights by denying him promotions to the rank of battalion chief in the City of Kansas City, Missouri, fire department between September 1977 and September 1979. Appellant alleged that appellees had denied him promotions because of protected first amendment activities. For the reasons discussed below, we affirm the judgment of the district court.

Appellant has been employed by the fire department since 1961. In July 1971 he was promoted to the rank of fire captain. In addition, from 1976 until 1981, appellant was president of the firefighters' union, International Association of Firefighters, AFL–CIO, Local No. 42.

The fire department is part of the municipal government of the City of Kansas City and is supervised by the director of fire and the fire chief. Appellee John Waas was fire chief at all times relevant to this action. Since Waas's retirement in 1980, Edward Wilson has been fire chief.

Below the rank of fire chief in order of command are deputy fire chiefs, battalion fire chiefs, fire captains, fire apparatus operators, and firefighters. Battalion chief is the lowest level management position. Promotion from fire captain to battalion chief is regulated by the city charter, administrative code, and personnel regulations. Candidates are ranked on a promotion eligibility list on the basis of written test results. Whenever a vacancy occurs, the deputy fire chiefs conduct personal interviews of the first five candidates on the list. The fire chief then appoints the battalion chief from the five candidates.

During the time period relevant to this action, the fire department experienced great turmoil and received much media attention. In October 1975 the union conducted a four-day strike. At this time all management level employees except for fire chief were members of the union; thus, during the strike Chief Waas was the only professionally trained firefighter on duty for the city.

Following the strike, in 1976 the union and the city entered into a "Memorandum of Understanding," which, among other things, prohibited management level employees from belonging to the union. In the memorandum the union and the city agreed to make good faith efforts to implement a plan of reorganization of the fire department. The plan included a work schedule change which caused a great deal of friction between the union and the city. In an attempt to resolve conflict in implementing the plan and the memorandum, appellant, as president of the union, and Waas, as fire chief, served as cochairpersons of the Labor/Management Committee. From July 1976 until May 1979, appellant frequently and vigorously opposed Waas, contending that the manner in which Waas was implementing the plan violated union members' rights.

On May 6, 1977, Waas wrote the following letter to appellant in his capacity as union president:

> This is to register my objection to the officers of Local # 42 of the fire fighters' union making frequent visits to the Deputy Chief's office at Fire Station # 10 to obstruct and try to alter the operation of the Fire Department.
>
> This practice is in direct violation of the Memorandum of Understanding, which sets forth a Labor/Management Committee to review procedures. I respectfully request that you refrain from any further such practice.

Copies of the letter were mailed to certain city and fire department officials.

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

On May 11, 1977, appellant responded to Waas by the following letter, which provided in part:

In answer to your letter of May 6, how dare anyone who has done as much as you to tear the Kansas City fire department to shreds accuse someone else of attempted obstruction or alteration. With your hand at the controls, the Kansas City Fire Department could not possibly be more completely obstructed by anyone else on the face of the earth.

Nothing would suit me better than to have a Fire Chief who would read and understand his own rules, give his word on an issue and then not violate his own word by his every action as you have....

....

If you are really interested in seeing the Memorandum upheld, I suggest some study courses for yourself and the rest of the chief officers under the direction of someone who does not carry such a pitifully twisted outlook toward the employees of the department as you seem to have developed.

Appellant mailed copies of his letter to the officials who had received Waas's letter and to the attorneys for the city and the union.

During the period from September 1977 until September 1979, appellant was ranked first on the promotion eligibility list for battalion chief. It is undisputed that appellant was qualified for the position. Waas, however, did not appoint appellant to any of the seven vacancies that occurred during this period.

Appellant then filed an action in district court pursuant to 42 U.S.C. § 1983, alleging that appellees violated his rights under the first and fourteenth amendments by denying him promotions in retaliation for protected union activities. In addition, appellant asserted as a pendent state claim a violation of Mo.Rev.Stat. § 105.510 (1978), which prohibits discrimination against public employees because of certain permitted union activities.

At the bench trial Waas testified that he had not promoted appellant to battalion chief because he questioned appellant's loyalty and whether appellant would work under him to implement his policies. Waas believed that discipline, morale, and efficiency in the fire department depended upon respect being shown to rank. In addition, Waas stated that he relied on management employees to implement his policies on a day-to-day basis in the field.

In support of his belief that appellant would be unsuitable as a management employee, Waas cited appellant's May 11 letter. Waas found the letter personally insulting and an inappropriate response to his letter of May 6. In addition, Waas testified to a 1979 incident which confirmed his belief that appellant did not respect and would therefore not support him as fire chief. The district court credited Waas's testimony that in 1979 appellant came to Waas's office to inquire why he had not been promoted. After Waas did not respond, appellant became hostile and called Waas a "chicken shit." Waas also testified that he believed that appellant had not wanted a promotion to battalion chief. The district court credited Waas's testimony about a 1978 telephone conversation in which appellant indicated he did not want a promotion at that time because he would have to resign as union president. The district court noted that appellant's testimony concerning the conversation revealed hostility toward and suspicion of Waas.

The district court found that appellees had not discriminated against appellant because of union activities. The district court believed that after receipt of appellant's May 11 letter, Waas was justified in not promoting appellant to battalion chief. Applying the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the district court held that "governmental interests in promoting the efficiency and morale of a department with a crucial public safety mission outweigh [appellant's] interest in speaking in the manner, time, and place which he chose." *Germann v. City of Kansas City*, 579 F.Supp. at 187. Because the district court found that appel-

lees had not discriminated against appellant on the basis of union activity, the district court dismissed his pendent state claim.

This court has recently stated that " 'the first amendment is violated by state action whose purpose is ... to intimidate public employees ... from taking an active part in [union] affairs or to retaliate against those who do.' " *Roberts v. Van Buren Public Schools*, 773 F.2d 949, 957 (8th Cir. 1985) (*Roberts* ), *citing Professional Ass'n of College Educators v. El Paso County Community College District*, 730 F.2d 258, 262 (5th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984). However, the court went on to state that "[a]s in the case of speech, ... an associational right [to join and participate in a union] must be balanced against, and may be overridden by, the government's interest as an employer in efficiency." *Roberts*, 773 F.2d at 957 (relying on *Pickering v. Board of Education*, 391 U.S. at 567, 88 S.Ct. at 1734).

 In applying the *Pickering* balance, courts should consider the following factors:

(1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or could cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties.

*Bowman v. Pulaski County Special School District*, 723 F.2d 640, 644 (8th Cir.1983). It must be kept in mind, however, that the *Pickering* balance is flexible and the weight to be given to any factor varies depending on the circumstances of the case. *Egger v. Phillips*, 710 F.2d 292, 319 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). Resolution of the *Pickering* balance is a question of law dependent on underlying factual findings. *Brockell v. Norton*, 732 F.2d 664, 667 (8th Cir.1984).

For reversal appellant contends that the district court erred in accepting Waas's reliance on the May 11 letter as a lawful basis on which to deny promotion. Appellant maintains that under *Pickering* the letter was protected first amendment activity because the letter addressed a matter of public concern, did not create disharmony in the working place or impede his performance of his duties. Based on our independent consideration of the relevant facts as found by the district court, we disagree.

Although we agree that the May 11 letter addressed a matter of public concern,[2] we nonetheless must consider the tone of the letter. "When a government employee personally confronts his ... supervisor, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also in the manner, time or place in which it is delivered." *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 415 n. 4, 99 S.Ct. 693, 969 n. 4, 58 L.Ed.2d 619 (1979). Appellant's May 11 letter accused Waas of being a liar, tearing the department to "shreds," having a "pitifully twisted outlook," and obstructing the department "more completely [than] anyone else on the face of the earth." After receipt of

---

2. "In determining whether speech addresses a matter of public concern, we consider the 'content, form, and context of a given statement, as revealed by the whole record.' " *Roberts v. Van Buren Public Schools*, 773 F.2d 949, 955 (8th Cir.1985) (*Roberts* ), *citing Connick v. Myers*, 461 U.S. 138, 147–48 & n. 7, 103 S.Ct. 1684, 1690–91 & n. 7, 75 L.Ed.2d 708 (1983). Speech addressing private interests, such as employee grievances or disagreements with internal policies, is not subject to the *Pickering* balance. *Roberts*, 773 F.2d at 955. Here, because appellant's letter concerned implementation of the fire plan during a time of great media attention, it addressed a matter of public concern. Contrary to the district court's suggestion, the fact that appellant's concerns were expressed in a letter addressed to Waas does not negate the public nature of the speech. *See id.*

the May 11 letter, Waas understandably felt personally insulted and reasonably questioned appellant's loyalty and respect for him as fire chief and whether appellant would promote and implement department policy. The May 11 letter expressed a degree of personal animosity and distrust beyond the sharp conflict which could be expected as a consequence of forceful representation of opposing interests. *Compare Hickman v. Valley Local School District Board of Education,* 619 F.2d 606, 609 (6th Cir.1980) (personality conflict between president of teacher's union and school principal resulting from union negotiations did not justify teacher's dismissal).

Appellant argues that the fact that the letter was personally insulting to Waas is irrelevant because of the absence of a close working relationship between a battalion chief and the fire chief. The evidence was that personal contact was limited to a two-hour weekly staff meeting. Although in other cases the presence of a close working relationship was critical, *e.g., Connick v. Myers,* 461 U.S. 138, 151, 103 S.Ct. 1684, 1692, 75 L.Ed.2d 708 (1983), "blind insistence upon the presence of an intimate working relationship gives to *Pickering* precisely that rigidity and formalistic structure that the Court so recently denied in *Connick.*" *Gonzales v. Benavides,* 712 F.2d 142, 148 (5th Cir.1983). Here, as the district court noted, because close supervision of a battalion chief by the fire chief was impossible, personal loyalty to the chief was critical to the management structure of the fire department. As was recently stated by the Federal Circuit, " '[c]ohesive operation of management is dependent on the loyalty of inferior management.... For management to countenance disloyalty ... would be for management to render itself impotent.' " *Brown v. Department of Transportation,* 735 F.2d 543, 547 (Fed.Cir.1984) (*Brown* ), *citing Brousseau v. United States,* 226 Ct.Cl. 199, 640 F.2d 1235, 1249 (1981).

Appellant also argues that the *Pickering* balance favors him because of the absence of evidence that the May 11 letter caused actual disruption in the work place or im-peded his ability to perform his duties. On the facts of this case, appellant "place[s] too great a burden on the agency to show harm." *Brown,* 735 F.2d at 547–48. Although in other cases evidence demonstrating actual disruption of work, *e.g., Hughes v. Whitmer,* 714 F.2d 1407, 1424 (8th Cir. 1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984), or impaired performance, *Nathanson v. United States,* 702 F.2d 162 (8th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983), was significant, the absence of such evidence in this case is not critical. It is not necessary "for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick v. Myers,* 461 U.S. at 152, 103 S.Ct. 1693. Appellant's comments were made after a firefighters' strike and amidst great turmoil in the fire department. *See Brown,* 735 F.2d at 547–48 (despite absence of evidence demonstrating substantial harm or interference, non-union supervisory air traffic controllers' comments encouraging an illegal strike were not protected given timing of comments and agency's interest in insuring safety during an emergency situation resulting from strike). Furthermore, we defer to the district court's finding that at trial appellant continued to demonstrate a great deal of personal hostility and suspicion of Waas. "In this state of affairs it would be folly [for an appellate court] to presume," *Janusaitis v. Middlebury Volunteer Fire Department,* 607 F.2d 17, 27 (2d Cir.1979), that appellant as battalion chief would respect Waas and work diligently to implement and promote his policies.

 Our finding that after receiving appellant's May 11 letter Waas was justified in not promoting appellant to battalion chief makes unnecessary a separate *Pickering* analysis of the 1978 telephone conversation and 1979 name calling incident. We note, however, that these instances are indicative of appellant's continuing hostility and disrespect for Waas. Our holding that

the May 11 letter was unprotected under *Pickering* also makes it unnecessary to address appellant's contentions that he was discriminated against because he was a named plaintiff in a state lawsuit challenging the exclusion of management employees from the union and had criticized public officials and that the city had a policy of discriminating against union leadership. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (an employer can defeat an employee's first amendment claim by demonstrating that the same employment decision would have been made in the absence of protected conduct).[3] Because appellant was not discriminated against on the basis of protected union activities, the district court correctly dismissed appellant's pendent state claim.

Accordingly, the judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, the district court clearly erred in holding that the appellees did not violate Germann's federal constitutional rights by denying him promotion to the rank of battalion fire chief in the City of Kansas City.

First, the record is clear that Germann was an excellent employee, that he ranked number one on the promotion list for battalion chief, that he received high marks on every efficiency report, that he frequently served as acting battalion chief, and that, on each such occasion, he efficiently carried out the duties of that position. Second, the record supports Germann's contention that he *always* cooperated with the fire chief in carrying out his duties as fire captain and acting battalion chief. Third,

there is no record of any disciplinary actions against Germann at any time during his over twenty-two years employment with the Kansas City Fire Department. Germann's only problem was that he was the president of the local union and vigorously represented the Union's position with regard to the reorganization of work shifts. The Union and Germann, as its president, had every right to vigorously present its position on this reorganization.

There is absolutely no evidence in the record to support the district court's finding that the morale of the department would be damaged if Germann was appointed fire chief. That conclusion is entirely speculative and is not supported by either written exhibits or oral testimony. Instead, one could just as reasonably draw the conclusion that appointment of Germann as battalion chief would restore harmony to the department because he was obviously qualified and had represented the Union and its members so vigorously.

What we come down to then is that the fire chief refused to promote Germann because Germann had led the Union's opposition to the departmental reorganization. The district court and this Court close their eyes to this fact and hinge their rulings on Waas's testimony that he objected to the tone of Germann's May 11, 1977, letter and found it to be personally insulting. In my view, this is unadulterated nonsense. Germann was acting as president of the Union when he sent the letter to the chief and was expressing his views in plain, albeit vigorous, language understandable to every working man. Such language is not uncommon in labor-management disputes. *See Hickman v. Valley Local School District Board of Education,* 619 F.2d 606, 609 (6th Cir.1980).

The majority opinion states that

---

**3.** In analyzing a first amendment claim by a public employee, a

> court must determine (1) whether the plaintiff has carried the burden of demonstrating that he engaged in protected activity, (2) whether the protected activity was a substantial or motivating factor in the actions taken against the plaintiff, and (3) whether the defendant has defeated the plaintiff's claim by demon-

> strating that the same action would have been taken in the absence of the protected activity. *Bowman v. Pulaski County Special School Dist.,* 723 F.2d 640, 643–44 (8th Cir.1983) (citations omitted).

Because we find that appellant's May 11 letter was unprotected activity, our analysis in this case was limited to the first step.

[a]lthough we agree that the May 11 letter addressed a matter of public concern, we nonetheless must consider the tone of the letter. "When a government employee personally confronts his ... supervisor, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also in the manner, time or place in which it is delivered." *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 415 n. 4, 99 S.Ct. 693, 696 n. 4, 58 L.Ed.2d 619 (1979). [Footnote omitted.]

The quoted footnote from *Givhan,* however, limits consideration of time, place and manner to *private* expressions. *Id.* In the case of *public* expression, such as the May 11 letter, "it is generally the *content* of his statements that must be assessed to determine whether they in any way either impeded the teacher's proper performance of his daily duties * * * or * * * interfered with the regular operation of the schools generally." *Givhan,* 439 U.S. at 415 n. 4, 99 S.Ct. at 696 n. 4. In *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1084, 75 L.Ed.2d 708 (1983), the Court considered the time, place and manner of the disputed communication only because it "touched upon matters of public concern in only a most limited sense[.]" *Id.* at 154, 103 S.Ct. at 1693–94. "We caution that a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." *Id.* at 152, 103 S.Ct. at 1693. Here, the May 11 letter was squarely addressed to a matter of public concern and the letter's strong language is directly traceable to Germann's representation of his Union on a hotly disputed and emotional issue. Neither the letter's content or tone, to the extent relevant, justifies Germann's nonpromotion.

The fireman of the Kansas City Fire Department will receive only one message from the majority's opinion. That message is: "It does not matter how hard you work or how well you do on promotional exams; if you act as the voice of your fellow employees in matters of great concern to them, then your chances of promotion are nil." The interests of the Kansas City Fire Department will not be well served by such an attitude.