Eileen STEVER, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 625, ST. PAUL; David A. Bennett, Superintendent; Dr. James C. Sargent, individually and in his capacity as Director of Personnel and Staff Relations; and Wanda Miller, individually and in her capacity as Supervisor of School Health Program, Appellees.

No. 90–5209.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1990.

Decided Sept. 3, 1991.

Rehearing and Rehearing En Banc Denied Nov. 1, 1991.

---

**6.** Intervenors also appeal from the district court's consent order finding the reasonable maximum levy limit to be $4.96.

Daniel E. Warner, Eagan, Minn., for appellant.

John M. Baker, Minneapolis, Minn., argued (Thomas M. Simpkins, on brief), for appellees.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Eileen Stever appeals from the district court's grant of summary judgment to the defendants in Stever's section 1983 action alleging retaliatory employment practices in violation of Stever's first amendment right to freedom of speech. We affirm in part and reverse and remand in part.

## BACKGROUND

Defendant Independent School District No. 625 (District) hired Stever as a school nurse in 1981. Defendants David A. Bennett, James C. Sargent, and Wanda Miller are the District's superintendent, former director of personnel and staff relations, and supervisor of the school health program, respectively. From the fall of 1981 through the spring of 1985, the District assigned Stever to Como Elementary School, where she worked primarily with physically handicapped special education students. Stever received favorable year-end reviews in 1982 and 1983. During those years, however, Stever repeatedly expressed concerns to Miller regarding a perceived failure by some Como staff to follow state laws requiring immunization of children before enrollment in school.

Stever's third-year evaluation, dated June 3, 1984, noted that "[c]oncerns have been expressed about Ms. Stever's interpersonal relationships which affect her cooperative working relationships with co-workers, students, and parents." It also stated: "Ms. Stever's persistence on her own agenda or task is being seen as irresponsive to needs, lack of listening to concerns and persistence in achieving a result even when it is not a mutual concern of the co-worker or parent." The evaluation recommended that Stever's contract be continued and that she remain at Como "in order that a program to improve interpersonal skills can be developed and monitored."

Stever submitted a written response contesting the criticism of her interpersonal skills and eventually filed a formal grievance through her union requesting that the evaluation be removed from her personnel file. In November 1985, union representatives and the district negotiated a revised

evaluation to replace the original in Stever's file.

When Stever returned to Como in the fall of 1984, building renovations had significantly reduced the space allocated to the nursing ward. In September 1984, Stever expressed concern to Miller and to Como's principal about the loss of a treatment room which had contained a wheelchair-accessible sink and space and equipment for handicapped students. In April 1985, Stever sent Miller a memorandum describing continued problems with wheelchair accessibility in the nursing area and the lack of a toilet in the remaining treatment room. She also expressed concern about an aide who had suffered seizures on the job and reported experiencing harassment and intimidation from "a very small segment of staff members." Stever sent Como's principal a copy of this memorandum on May 7, 1985.

In the early spring of 1985, the school nurse at Bridge View Elementary, a school for mentally and physically handicapped students, retired and had to be replaced. Miller discussed the vacancy at Bridge View at a Nursing Advisory Committee meeting in April 1985. Stever's complaint alleges that Miller stated at this meeting that if no one volunteered for the position, she would assign the most qualified nurse with the least seniority. Although Miller offered this position individually to every school nurse in the District, no one volunteered for the job. On May 16, 1985, Stever had an annual "MBO" meeting with Miller and Como's principal.[1] Stever was offered, and declined, the Bridge View assignment at this meeting.

In July 1985, Miller informed Stever that she was being transferred to Bridge View.

Stever's complaint alleges that at the time of the transfer, the District employed at least seven qualified nurses with less seniority than Stever and at least three with seniority equal to Stever's. Miller sent Stever a letter on July 25, 1985, listing her reasons for the transfer:

> Bridge View needs a school nurse with knowledge and experience in the technical procedures that are required to provide quality school nursing services to students with severe physical handicaps. You are better prepared in the technical aspects of medically delegated treatments and nursing functions than any other nurse in the district.
>
> .    .    .    .    .
>
> Interpersonal relationships at Como have deteriorated to the point where I do not believe that intervention at Como would be helpful in resolving the problem. I am convinced that any process of intervention will need to begin in a new setting with new personnel.[2]

Stever filed a grievance over the transfer to Bridge View, but worked the Bridge View assignment for the school year 1985–86. In May 1986, a grievance resolution conference among District and union representatives, Stever, Como's principal, and Miller resulted in Stever being offered reassignment to Como on a trial basis for the 1986–87 school year.[3] In offering this settlement, the District maintained its denial that the transfer to Bridge View violated either school board policy or Stever's contract rights. In accepting the settlement on Stever's behalf, her attorney expressed Stever's concerns about inadequate nursing staff and space at Como, compliance with student immunization requirements, and the attendant risk to students.

---

1. "MBO" stands for "Management By Objectives." MBO meetings were held each spring between District personnel and their supervisors to review past performance and to set goals for the following school year.

2. In October 1985, in partial settlement of a grievance Stever filed challenging the transfer, Miller revised the letter listing reasons for the transfer, deleting all references to deteriorating interpersonal relationships at Como and removing the statement that Stever was the most tech-

nically proficient nurse for the Bridge View position.

3. In April 1986, prior to the grievance resolution conference, District officials met to discuss transferring Stever back to Como. Miller's notes from this meeting indicated a concern that returning Stever to Como might cause the original transfer to Bridge View to be viewed as "veiled discipline." The District nonetheless approved Stever's transfer back to Como.

Stever returned to Como in the fall of 1986. In January 1987, she sent a memorandum to Miller and to Como's principal regarding difficulties she was experiencing with the heavy nursing caseload at the school. Miller and Como's principal met with Stever several times to discuss a daily timetable to accommodate Stever's numerous tasks. Stever subsequently informed them, however, that the suggested schedule was not sufficiently flexible to meet unexpected problems and that she continued to have inadequate time to attend staff and student intake meetings, complete paperwork, and take a lunch break.

On April 20, 1987, Stever and other Como staff members were assigned to write health assessment reports on Como students to facilitate placement evaluations by the District. The reports were to be completed by April 29, 1987. Stever was unable to complete the reports on time and received several deadline extensions from Miller and two days of extra nursing help at Como to enable her to finish the reports. Stever nonetheless failed to complete all the reports by the end of the school year. She offered to use vacation time to complete them if the District would compensate her, but the District declined to do so. Stever finally completed the health assessment reports on July 9, 1987.

Stever was also expected to complete end-of-year reports as part of the nursing assignment at Como. She missed the May 28, 1987 deadline for these reports and received several extensions from Miller. Stever completed three of nine required reports by July 9, 1987. She never completed the remaining six end-of-year reports.

On July 28, at the direction of David Frye, the District's associate superintendent for instruction, Miller sent Stever a memorandum chronicling Stever's "lengthy delays in completion of health assessments, failure to complete reports and lack of contact or explanation to [Miller] or specified administrators" in failing to comply with deadlines. The memorandum concluded:

Your apparent disregard for meeting required due dates relating to your assignment has affected the District's ability to serve students, and has placed additional burdens on others who must be able to depend on your professional service in order to successfully complete their assigned tasks. I have fully reviewed this matter with Dr. Frye and he has directed me to complete this review of events in memorandum form, to be incorporated into your personnel file.

Miller's memorandum and a similar memorandum from Sargent, the District's director of personnel and staff relations, were placed in Stever's personnel file. On August 24, 1987, Stever was transferred from Como to Horace Mann Elementary School and the St. Paul Developmental Achievement Center (DAC), a private entity which contracted with the District for nursing services. Miller recommended the transfer, which was approved by Frye and supported by Como's principal. Stever filed another grievance challenging the transfer and the placement in her personnel file of memoranda concerning her failure to complete required reports. An arbitrator concluded after a hearing that the memoranda accurately represented the events they discussed and therefore should not be expunged from Stever's record. Stever withdrew her grievance over the transfer to Horace Mann, deciding instead to pursue an action in federal court.

Following the 1987–88 school year, Stever applied for the summer school nursing position at Como, a job she had held in the summer of 1987. Stever's application was denied. Stever alleges that John Brandt, a teacher who processed applications for special education summer school positions in 1988, told her that she would not get the job at Como because she won her initial grievance. In an affidavit, Brandt stated that he was not involved in screening or placement of applicants for the summer school positions and had no personal knowledge of the reason Stever did not receive the job. Brandt also denied making the statement Stever attributes to him.

In August 1988, the District notified Stever that the DAC would no longer be contracting with the District for nursing

services. Stever remained at Horace Mann, where her responsibilities included more paperwork and no contact with severely handicapped students.

In October 1988, Stever commenced this action under 42 U.S.C. § 1983 alleging violations of her first amendment rights. She claimed that the District subjected her to inter-school transfers, denied her the 1988 summer school assignment at Como, and removed her from working with severely handicapped students in retaliation for her speaking out on matters of public concern. Stever also claimed that these actions violated her state law rights under the Public Employees Labor Relations Act (PELRA), Minn.Stat. §§ 179A.13, subd. 2(1) and 179A.06, subd. 1, and that the inclusion in her personnel file of "false and misleading" memoranda discussing her failure to timely complete required reports constituted defamation.

On defendants' motions for summary judgment, the district court applied the three-part analysis established by *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The district court concluded that Stever's written and orally expressed views regarding immunization, loss of nursing space at Como, understaffing, and student safety were entitled to first amendment protection, satisfying the first prong of the *Mt. Healthy* test. *See* 429 U.S. at 287, 97 S.Ct. at 576. The district court also found, however, that Stever had failed to produce sufficient evidence to raise a genuine issue of material fact regarding whether her protected speech was a substantial or motivating factor in the District's decisions to transfer Stever to Bridge View and Horace Mann, to deny her a summer school position, and to remove her from working with severely handicapped children. Because Stever had not satisfied the second prong of the *Mt. Healthy* test, the district court determined that summary judgment was appropriate without considering *Mt. Healthy*'s third prong, whether the District could prove that it would have taken the same actions absent Stever's speech. *See id.*

Accordingly, the district court granted summary judgment to the defendants on Stever's first amendment cause of action and dismissed Stever's pendant PELRA and defamation claims without prejudice. Stever appeals.

## DISCUSSION

■ Stever claims that the district court erred in granting summary judgment because genuine issues of material fact exist regarding the District's motives for taking the four employment actions of which she complains. She also alleges that the district court abused its discretion in dismissing her pendant state-law claims without considering the effect of the state statute of limitations on her ability to pursue those claims in state court.

We review a grant of summary judgment under the same standard applied by the district court: whether, viewing the facts and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party, a genuine issue exists as to any material fact. *McCuen v. Polk County, Iowa*, 893 F.2d 172, 173 (8th Cir.1990); *Nooner v. Pillsbury Co.*, 840 F.2d 560, 562 (8th Cir.1988); *see also City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op.*, 838 F.2d 268, 273–74 (8th Cir.1988) (once moving party has demonstrated that record does not disclose genuine dispute on material fact, nonmoving party must set forth specific facts showing existence of genuine dispute on that issue). Summary judgment is proper where there is no genuine issue of material fact, entitling the moving party to judgment as a matter of law. *McCuen*, 893 F.2d at 173.

### I. *Protected Speech*

■ Stever first had the burden to show that she engaged in constitutionally protected speech. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. "The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1691 n. 7, 75 L.Ed.2d 708 (1983). Accordingly, we review the district court's conclusions regarding the protected nature of Stever's speech

de novo. *See Roberts v. Van Buren Public Schools*, 773 F.2d 949, 955 (8th Cir. 1985).

To establish that speech is constitutionally protected, a public employee first must demonstrate that the speech addressed a matter of public concern. *Connick*, 461 U.S. at 143, 103 S.Ct. at 1688. Once a public employee makes this threshold showing, the employee's interest in speaking on matters of public concern must be balanced against "'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Roberts*, 773 F.2d at 954 (quoting *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)).

This balancing of interests requires consideration of the following factors:

(1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or could cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties.

*Bowman v. Pulaski County Special School Dist.*, 723 F.2d 640, 644 (8th Cir. 1983) (citing *Connick*, 461 U.S. at 151–54, 103 S.Ct. at 1692–94).

The district court found that Stever's communications with her superiors addressed matters of public concern in the following instances: (1) the September 1984 meeting at which Stever objected to the loss of nursing space at Como; (2) Stever's memorandum of April 1985, in which she described continuing problems caused by lack of nursing space; (3) letters written to the district by Stever's attorney in June and August 1986 expressing Stever's concerns about lack of nursing space, understaffing, and inadequate compliance with immunization requirements at Como; and (4) Stever's memoranda of January and

March 1987 discussing problems arising from her heavy work load, such as inadequate time to serve student needs and to handle nursing emergencies. The court found, however, that Stever's written response to her 1983–84 evaluation and other subsequent communications addressed purely personal concerns.

The district court then balanced Stever's interest in speaking on matters of public concern such as student safety against the District's interest in the efficient operation of its schools. Applying the six factors listed above, the court found that Stever's speech did not adversely affect workplace harmony, close working relationships, or Stever's ability to perform her duties; and that Stever's views were expressed in a reasonable time, place, and manner. The court found that the breakdown in workplace tranquility and collegiality at Como was the result of individual personalities and attitudes rather than of Stever's speech. The court also found, however, that Stever's speech arose as much from her personal concerns as from her interest in student welfare, and that her interjection of personal complaints about her job into her discussion of student health issues lessened the degree of public interest in her speech. On balance, the court concluded that Stever had set forth sufficient facts to show that her interest in speech outweighed the District's interest in an efficient school system.

Our review of the record persuades us that the district court's findings and conclusions regarding the protected nature of Stever's speech are correct with one exception. Stever's written response to her 1983–84 evaluation included statements indicating her continuing concern over the failure of some Como staff members to cooperate in ensuring that student immunizations were completed within the period of time required by law. These statements were a reiteration of concerns Stever had expressed to Miller during her first two years at Como. The district court found that the District's immunization policies were a matter of public concern when raised in Stever's attorney's June and Au-

gust 1986 letters to the District, and we believe the same analysis applies to Stever's earlier communications about the subject.

Nothing in the record indicates that Stever's earlier expressions of concern to Miller about immunization practices at Como adversely affected close working relationships or Stever's ability to perform her duties. Similarly, the District produced no evidence that these communications were made in an inappropriate time, place, or manner. Additionally, student immunizations were of a degree of public interest sufficient to be required by the state legislature. While Stever's insistence on compliance with state immunization laws may have irritated those Como staff members she criticized for lack of cooperation, we believe the degree of public interest in disease prevention outweighed any workplace disharmony Stever's speech may have caused. Accordingly, we find that Stever's communications regarding student immunizations also constituted protected speech. *See Roberts,* 773 F.2d at 954.

## II. *Substantial or Motivating Factor*

Stever next bore the burden of establishing that her protected speech was a substantial or motivating factor in the adverse employment decisions of which she complains. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. Whether protected conduct was a substantial or motivating factor in an employment decision is a question of fact. *See Roberts,* 773 F.2d at 954. The sufficiency of the evidence to create an issue of fact for the jury, however, is solely a question of law. *See Ogilvie v. Fotomat Corp.,* 641 F.2d 581, 589–90 (8th Cir.1981).

The district court analyzed the evidence of motive separately for each of the four employment decisions Stever challenges. Regarding the transfer to Bridge View, the court noted Stever's satisfactory performance reviews for 1981–82 and 1982–83, her recognized abilities and outspokenness, her successful grievance and return to Como following a year at Bridge View, her assertion that other District nurses were equally qualified for the Bridge View position, and

Miller's concern that Stever's transfer to Bridge View would be regarded as veiled discipline in light of Stever's subsequent return to Como.

Considering this evidence, the court found:

"[P]laintiff has not presented facts sufficient to support her claim and withstand defendants' motion for summary judgment. Plaintiff has simply set forth no connection between the two instances of speech and defendants' decision. In fact, each item of plaintiff's proffered evidence supports defendants' position as well. Teaming and immunization were clearly problems at Como School in 1983–85. The problems were well known.... Tensions certainly existed between plaintiff and other staff members, including Leverentz and DeGree.... There was confusion over plaintiff's involvement in social worker assignments, ... and her use of student files at home....

It is clear, moreover, that plaintiff was outspoken in the years prior to the challenged transfer. If defendants had wished to transfer plaintiff as a penalty, they would have done so previously. The re-transfer to Como following the 1985–86 year could just as well be viewed as an opportunity for reconciliation and a second chance. On analysis, plaintiff gives the Court no facts which relate plaintiff's two instances of speech and the transfer. Rather, the evidence shows any discord at Como appears to have evolved from out of personal differences and not from plaintiff's exercise of her right to speak freely."

*Stever v. Independent School Dist. No. 625, et al.,* Civ. No. 4–88–487, order at 29–30, 1990 WL 32051 (D.Minn. Mar. 22, 1990) (record citations omitted).

We believe the district court's conclusion about the sufficiency of the evidence of motive reflects a failure to view the facts and all reasonable inferences to be drawn therefrom in the light most favorable to Stever. *See Nooner v. Pillsbury Co.,* 840 F.2d 560, 562 (8th Cir.1988). The district court noted that the evidence Stever relied on to establish an impermissible motive

could also be read to support the District's contention that it transferred Stever because of interpersonal friction at Como. On a motion for summary judgment, however, the non-moving party is entitled to have such a conflict of reasonable inferences resolved in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Additionally, we believe that the timing of the decision to transfer Stever raises an inference of retaliatory motive. Stever sent memoranda discussing her concerns about student safety to Miller and to Como's principal in April and May 1985. In July 1985, Miller transferred Stever involuntarily to Bridge View to fill a position which had been turned down by every nurse in the District. We believe that the order and temporal proximity of these events should not be regarded as coincidental on a motion for summary judgment. *See McGee v. South Pemiscot School Dist. R–V*, 712 F.2d 339, 343 (8th Cir.1983) (suspicious sequence of events is one factor to consider in evaluating whether plaintiff's protected speech motivated adverse employment decision).

Moreover, our review of the record discloses additional evidence which, when viewed in the light most favorable to Stever, bolsters the inferences of impermissible motive Stever has raised. The District's reasons for transferring Stever to Bridge View were set forth in Miller's July 25, 1985 letter to Stever:

> Bridge View needs a school nurse with knowledge and experience in the technical procedures that are required to provide quality school nursing services to students with severe physical handicaps. You are better prepared in the technical aspects of medically delegated treatments and nursing functions than any other nurse in the district.[4]

> .     .     .     .     .

> Interpersonal relationships at Como have deteriorated to the point where I do not believe that intervention at Como would be helpful in resolving the problem. I am convinced that any process of intervention will need to begin in a new setting with new personnel.

The first reason for the transfer, Stever's technical nursing expertise, is undermined by deposition testimony of Ann DeGree, Como's principal, and Karen Leverentz, team leader for Como's early childhood program. DeGree stated her belief that Stever had "an adequate medical background for a school nurse." Deposition of Ann DeGree at 31. Leverentz stated: "She's an average nurse. I mean—she performed her duties as expected in most cases." Deposition of Karen Leverentz at 8. These opinions, expressed by individuals who worked with Stever and other nurses every day, fall short of Miller's statement that Stever was "better prepared in the technical aspects of medically delegated treatments and nursing functions than any other nurse in the district." [5]

Stever thus challenges as pretextual Miller's assertion that Stever received the Bridge View assignment because her qualifications exceeded those of every other nurse in the District.

---

**4.** Stever asserts in her brief that "[t]here were many other qualified, less senior nurses who could have been assigned to Bridge View but were not" and that

> Miller chose to transfer Mrs. Stever to Bridge View over all other nurses, even though the nurse who took Mrs. Stever's assignment at Como was working at Bridge View that summer and was orientated [sic] to its students.... The reassignment of Mrs. Stever, who was familiar with Como student's [sic] medical histories, to Bridge View where she was unfamiliar with any of the medical histories of the students, and vice versa with respect to the nurse at Bridge View that summer, was illogical.

Brief of Appellant at 34.

**5.** The dissent characterizes the Leverentz and DeGree depositions as "evidence that not even Stever advances on appeal." Stever could hardly be expected to argue specifically that Miller overestimated her nursing ability, particularly in view of the grounds on which she challenges the District's subsequent employment actions. Stever does, however, argue that other District nurses were equally qualified for the Bridge View position. *See supra* note 4. The opinions of Stever's immediate superiors that she was an average nurse constitute specific facts in support of Stever's assertion. *See City of Mt. Pleas-*

■ Moreover, the revised version of Miller's letter, drafted as part of the settlement of Stever's grievance, omitted the assertion that Stever was better prepared technically for the Bridge View position than other District nurses. It stated only that the assignment required "a nurse who is knowledgeable and experienced in technical procedures" to perform "precise execution of techniques," and that Stever had demonstrated such skills in the past. We believe the discrepancies between Miller's original letter and the revised letter and testimony of DeGree and Leverentz raise a disputed issue of fact regarding whether the District used Stever's purported nursing expertise as a pretext for transferring her in retaliation for her outspokenness on matters of public concern.[6]

The second reason given for the transfer, deteriorating interpersonal relationships at Como, also raises a question of fact regarding the existence of a cause-and-effect relationship between Stever's protected speech and her transfer to Bridge View. The record indicates that Stever expressed concern about the failure of some Como staff to cooperate in ensuring compliance with state immunization laws from the time she was first employed at Como. The record further indicates that others shared Stever's concern. Deposition of Karen Leverentz at 12–13 (nurses running the infant program at Como had difficulty securing immunization information from students' families, a problem which persisted through the time of the deposition); Memorandum of April 10, 1985 from Doris Meyer to various Como staff members (expressing infant program nurse's frustration with Como staff for lack of cooperation in collecting immunization data).

The first indication in the record of Stever's difficulties with interpersonal relationships at Como is her 1983–84 annual evaluation, which criticizes "her persistence on her own agenda or task." If Stever's "agenda" involved compliance with state immunization requirements, interpersonal friction arising therefrom cannot justify her transfer to Bridge View, because it is inextricably linked with her protected speech. *See Patterson v. Masem,* 774 F.2d 251, 256 (8th Cir.1985) (plaintiff's perceived lack of interpersonal skills due to abrasiveness and antagonism she engendered among peers could not be legitimate factor justifying refusal to promote if peers' antagonism resulted from their disagreement with plaintiff's civil rights activism); *Roberts,* 773 F.2d at 958 n. 6 (decline in plaintiff's evaluation marks could not be used to justify her dismissal insofar as lower scores could be traced to supervisor's disapproval of plaintiff's union activities); *see also Hickman v. Valley Local School Dist. Bd. of Educ.,* 619 F.2d 606, 609 (6th Cir. 1980) (where personality conflict between teacher and principal and decline in teacher's evaluations were traceable to teacher's union activities, neither conflict nor decline could justify teacher's dismissal), *cited with approval in Roberts,* 773 F.2d at 958 n. 6.

To the extent that Stever's protected speech regarding immunization policies at Como caused the deterioration in interpersonal relationships referred to in Miller's letter and Stever's 1983–84 evaluation, that deterioration was an improper reason for transferring Stever to Bridge View. Whether interpersonal friction at Como in fact stemmed from Stever's protected speech remains a disputed issue, precluding summary judgment.

*ant,* 838 F.2d at 274. At trial, the defendants may, of course, establish that the reasons for Stever's transfer were as stated in Miller's letter. Stever has brought forth affirmative evidence, however, to make those reasons a genuine dispute.

6. The dissent cites to no authority for the proposition that because the changes in Miller's letter occurred as part of the employment grievance settlement process, they should not be considered as evidence in a subsequent lawsuit.

Again, the defendants will have an opportunity at trial to explain the reasons for changing the contents of the letter. Nothing in this opinion should discourage school districts from attempting to settle grievances with employees. To the contrary, settlement of such grievances is always to be encouraged. The successful settlement of a grievance based on an employment contract, however, should not immunize an employer from a subsequent lawsuit grounded on a constitutional right.

Stever has set forth affirmative evidence of specific facts demonstrating a genuine dispute on the issue of the District's reasons for transferring her from Como to Bridge View. She has thus met her burden in opposing the motion for summary judgment on this issue. *See Liberty Lobby,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15; *City of Mt. Pleasant,* 838 F.2d at 274.

■ With regard to the other three employment actions which Stever challenges, the district court found that Stever had failed to establish any nexus between her protected speech and the District's decisions. We agree. Stever's transfer to Horace Mann occurred following a year in which she failed, despite repeated extensions, to complete the paperwork required in her position at Como. The record shows that the nurses who held that position in the preceding and following years completed all required paperwork without difficulty. Stever's removal from working with severely handicapped students at the DAC resulted from the DAC's decision to terminate its contract with the District for nursing services, a decision over which the District apparently had no control. Finally, the only evidence of retaliatory motive in Stever's failure to receive the summer school position she sought in 1988 is Stever's assertion that another District employee told her that she would not get the job because she had won her initial grievance. The employee in question, who denied making the statement, played no role in the selection of summer school personnel and had no knowledge of the criteria used in making the selection. Accordingly, the district court correctly found the defendants entitled to summary judgment on those portions of Stever's claim attacking her transfer to Horace Mann, her removal from working with severely handicapped students, and her failure to receive the 1988 summer school position at Como.

## CONCLUSION

Because we find that Stever has raised a genuine issue of material fact concerning the District's motives for the Bridge View transfer, we reverse the district court's grant of summary judgment to the defendants solely as it relates to that employment decision. We affirm the grant of summary judgment regarding the other employment decisions which Stever challenges. The record does not indicate whether Stever will be entitled to more than nominal damages if she prevails on the merits of her first amendment claim. Because she has established that she engaged in protected speech, however, and because she has raised a genuine issue of material fact regarding the defendants' motives for her transfer, she is entitled to a trial on the merits of that aspect of her federal claim.

Accordingly, we remand this case to the district court for a trial on the merits of Stever's claim that the District transferred her from Como to Bridge View in retaliation for the exercise of her right to freedom of speech. We also reverse the dismissal without prejudice of Stever's PELRA and defamation claims. Because the district court retains jurisdiction over Stever's federal cause of action, it continues to have pendant jurisdiction over Stever's state-law claims.

Costs for this appeal shall be taxed against defendants. To the extent that Stever ultimately prevails on the merits of her section 1983 claim, she may make application for an award of attorneys' fees under 42 U.S.C. § 1988.

WOLLMAN, Circuit Judge, concurring in part, dissenting in part.

I concur in the court's decision to affirm the district court's ruling that there was no nexus between Stever's protected speech and her transfer to Horace Mann, her removal from working at the DAC, and her failure to receive the 1988 summer job.

I respectfully dissent, however, from the court's holding that Stever has established a first amendment claim sufficient to withstand a motion for summary judgment regarding the alleged retaliatory transfer to Bridge View in 1985. To reach its contrary conclusion, the court has found it necessary to search the record for evidence that not even Stever advances on appeal—the depo-

sition testimony of Ann DeGree and Karen Leverentz regarding their assessment of Stever's nursing expertise. Whatever opinion these two individuals may have had, it was Miller's opinion that counted—unless we have reached the point of holding that a school administrator is a mere minion, a subaltern to her staff.

The change in Miller's original letter that occurred during the settlement of Stever's grievance should be viewed in the context of the settlement process. Although receipt of the settlement terms may not have violated the letter of Rule 408 of the Federal Rules of Evidence, the deletion of the language regarding Stever's technical skills and her problems with interpersonal relationships should be viewed in the light of the school district's desire to settle an employee grievance, a process that school districts would be well advised not to utilize in the light of its adverse consequences to a district in an employee's subsequent lawsuit, as witnessed by the holding in this case.

School administrators should be able to go about their primary task—that of providing an adequate education for the students in their charge—without being inhibited in the performance of that task by the constant threat of litigation from those employees who are dissatisfied with administrative decisions. Today's decision can only be read by school administrators as accentuating rather than ameliorating that inhibition. It is all very well to talk of the jury's ability to sort fact from fiction, but it is the duty of the courts to ensure that school administrators be spared the burden of establishing, and juries the task of confirming, that only fiction exists when there is no probative evidence to the contrary. Speculation and conjecture may have been a sufficient basis to withstand a motion for summary judgment in the days when that procedural device was viewed with suspicion, if not outright hostility, but that day is past, *see, e.g., City of Mt. Pleasant v. Associated Electric Cooperative*, 838 F.2d 268, 273-74 (8th Cir.1988), and this case should be decided in such a way as to confirm that fact.

The right of free speech must be protected, but there should be solid, nonspeculative evidence that that right has been infringed before school administrators are required to defend their decisions in court. Teachers have constitutional rights, but there should be constitutional redress for neither the malcontented nor for the masters of the fancied insult. The enhancement of learning, rather than the forestalling of possible litigation, should be the overriding consideration guiding school administrators' decision making. We do no service to the cause of free speech when we inhibit decision makers from the proper exercise of their duties by insulating discontented employees from adverse employment decisions by giving credence to their fanciful, speculative, unsubstantiated claims of unconstitutional retaliation.

The court reaches the right decision on three of Stever's claims. It should go further and reject her fourth claim as well by affirming the district court in all respects.