William MAROHNIC,
Plaintiff-Appellant,

v.

Richard WALKER and the Barren River Regional Mental Health-Mental Retardation Board, Incorporated, Defendants-Appellees.

No. 85–5621.

United States Court of Appeals,
Sixth Circuit.

Argued June 5, 1986.

Decided Sept. 10, 1986.

David F. Broderick, Scott A. Bachert, Cole, Harned & Broderick, Bowling Green, Ky., for defendants-appellees.

Thomas A. Noe (argued), Russellville, Ky., for plaintiff-appellant.

Before KEITH and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

Plaintiff-appellant William Marohnic appeals from the district court's grant of summary judgment in favor of defendants-appellees Richard Walker and The Barren River Regional Mental Health-Mental Retardation Board, Inc. (the "Board"). On appeal, Marohnic asserts that material issues of fact exist concerning his claim that Walker made negative statements about him in retaliation for his First Amendment speech. We reverse.

Viewing the evidence in the light most favorable to Marohnic, Fed.R.Civ.P. 56(c); see SEC v. Blavin, 760 F.2d 706, 710 (6th Cir.1985) (per curiam), the following series of events led to Marohnic's instituting this action. Marohnic, after obtaining a master's degree in social work in 1975, began working for the Board and, approximately eighteen months later, was promoted to the position of Associate Director. Marohnic's career proceeded smoothly until the summer of 1979, when he was approached by the Kentucky Attorney General's office concerning an investigation into alleged medicaid fraud occurring at the Board. Marohnic cooperated with the investigation which culminated in the Board admitting that its employees and agents had fraudulently altered approximately $5,500 in billings.

Shortly after Marohnic began aiding the investigation, Walker, the Board's Executive Director, learned of Marohnic's participation and initiated a pattern of harassment and slander against Marohnic. Unable to work in this hostile environment and faced with the possibility of being fired, Marohnic resigned and brought a civil rights action, 42 U.S.C. § 1983 (1982), against Walker and the Board contending that Walker's retaliatory conduct violated his First Amendment rights. This litiga-

tion ended with a settlement agreement which provided, among other things, that the Board would supply Marohnic with an "unqualified positive letter of recommendation" and remove all negative matters from Marohnic's personnel file.[1] Marohnic then began looking for employment.

Marohnic submitted letters of introduction to over seventy prospective employers, twenty-five of whom expressed interest in his application. As Marohnic's applications proceeded through the screening process, however, interest abruptly declined. Confronted with this situation, Marohnic started contacting the employers who had shown an initial interest in his application to discern if a problem existed with his credentials.

Jackie Kwalick of the Comprehensive Mental Health Center in Covington, Kentucky had called Marohnic, informed him of a new program the Center was opening, requested a resume and a list of references, and made tentative plans for an interview. After failing to hear from Ms. Kwalick for two to three weeks, Marohnic took the initiative and contacted Ms. Kwalick to determine the status of his application. Ms. Kwalick responded, evasively, that the Center was not hiring at present and pointed out that the Executive Director of Comprehensive Mental Health Center knew Mr. Walker "very closely." A similar series of events occurred with David Bell from Mountain Comprehensive Care Center who had called Marohnic, expressed interest, and asked for references. Thereafter, however, Bell never recontacted Marohnic or returned any of Marohnic's calls.

Neal Tillow, representing the Northern Kentucky Alcohol Abuse Program, asked Marohnic for a copy of his resume and, after reviewing it, sent Marohnic a letter stating that he was a "top applicant." Nonetheless, Marohnic was not interviewed for a position. Upon Marohnic's inquiry, Tillow acknowledged that Marohnic's qualifications were fine, but indicated that some

---

1. Neither the interpretation of this settlement agreement or Marohnic's concomitant release

are at issue on this appeal.

problem existed with his past employment record.

Marohnic's frustration continued when the Central Kentucky Action Community Agency failed to interview him. Although Robert Tatum had informed Marohnic that he was a "finalist" for a position prior to the reference check stage, Tatum later told Marohnic that a problem existed with the Board's recommendation. According to Tatum, although nothing positive or negative was said, it was what the Board wasn't saying that influenced the decision not to interview Marohnic. Tatum referred Marohnic to Terry Ward for additional information. Ward, while refusing to be specific for confidentiality reasons, advised Marohnic to cease using the Board's recommendation.

Marohnic attempted to confirm his suspicion that Walker was giving him bad recommendations by having a friend, Robert Craig, call Walker posing as a prospective employer. Craig, during the telephone conversation, asked Walker a series of prepared questions about Marohnic. Walker informed Craig that Marohnic had mediocre leadership qualities, was not a good administrator, was ineffective in getting along with others, especially with women, and was immature. Moreover, Walker suggested that Craig "check around."

Marohnic commenced this action alleging that Walker was providing prospective employers with bad recommendations in contravention of the settlement agreement and in violation of the First Amendment. The district court granted the defendants' motion for summary judgment holding that Walker and the Board had complied with the plain language of the settlement agreement.[2] The district court, however, never directly addressed Marohnic's First Amendment claim except to note that, in any event, Marohnic had failed to establish any damages. This appeal ensued.

Before considering the merits of Marohnic's First Amendment claim, we must first determine whether Marohnic properly pre-

served this issue for review. Walker and the Board contend that Marohnic failed to present his First Amendment claim to the district court and, therefore, is precluded from raising it before this Court. *See Sigmon Fuel Co. v. TVA*, 754 F.2d 162, 164–65 (6th Cir.1985) (citing cases); *Wiper v. Great Lakes Engineering Works*, 340 F.2d 727, 731 (6th Cir.) (citing cases), *cert. denied*, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965). We find this contention meritless.

■ The First Amendment claim was clearly pleaded in Marohnic's complaint and was interposed by him in response to the defendants' motion to dismiss for failure to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). Although Marohnic's response to the defendants' motion for summary judgment did not explicitly refer to his First Amendment claim, this omission is unexceptional in light of the failure of the defendants' summary judgment motion to mention the First Amendment. Also, Marohnic's response did address the defendants' factual argument that Walker never made any negative statements about Marohnic. More importantly, in his motion to alter or amend the district court's judgment, Fed.R.Civ.P. 59(e), Marohnic pointed out that the district court's opinion never addressed his First Amendment claim and requested, after a detailed discussion of the applicable law, that the claim be reinstated. Marohnic thus presented the district court with his legal and factual arguments pertaining to his First Amendment claim and gave the district court an opportunity to rule on it. Accordingly, we hold that Marohnic is not barred from raising his First Amendment claim before this Court and turn to the merits of this appeal.

■ In order to establish a *prima facie* First Amendment violation, Marohnic had to demonstrate that his protected conduct motivated Walker to give potential employers negative references. *See Mount Healthy City School District Board of Education v. Doyle*, 429 U.S.

---

**2.** Marohnic has not appealed this holding.

274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Hickman v. Valley Local School District Board of Education,* 619 F.2d 606, 608 (6th Cir.1980). The first element of Marohnic's claim, and a threshhold legal requirement, *Connick v. Myers,* 461 U.S. 138, 150 & n. 10, 103 S.Ct. 1684, 1692 & n. 10, 75 L.Ed.2d 708 (1983), is that he engaged in protected conduct. Marohnic's speech, in this case, will be deemed protected by the First Amendment if it can be fairly characterized as touching upon a matter of public concern, as determined by the content, form, and context of his speech. *Id.* at 147–48, 103 S.Ct. at 1690. Yet, even if Marohnic's speech touches upon a matter of public concern, its value still must be weighed against its impact upon the efficiency, discipline, and proper administration of the Board. *See Pickering v. Board of Education of Township High School District 205, Will County,* 391 U.S. 563, 569–70, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968); *Columbus Education Association v. Columbus City School District,* 623 F.2d 1155, 1160 (6th Cir.1980).

▇ Marohnic's speech to the Kentucky Attorney General's investigators concerned fraudulent billing by the Board. Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law, *see Connick,* 461 U.S. at 149, 103 S.Ct. at 1691, and seeing that public funds are not purloined, *see Czurlanis v. Albanese,* 721 F.2d 98, 104–05 (3d Cir.1983) (waste of taxpayers' money a subject of public interest); *cf. Pickering,* 391 U.S. at 571–72, 88 S.Ct. at 1736 (funding of schools of public concern). Thus, the content of Marohnic's speech indicates that it related to a matter of public interest. In addition, Marohnic's speech was made in the context of a state investigation. Public policy strongly supports and encourages protecting speech made at the behest of law enforcement officials. This context further reveals that Marohnic's speech was induced by civic commitment, not by an employment related dispute. *See Rowland v. Mad River Local School District,* 730 F.2d 444, 449 (6th Cir.1984), *cert. denied,* 470 U.S. 1009, 105

S.Ct. 1373, 84 L.Ed.2d 392 (1985). We hold, therefore, that Marohnic's speech which exposed graft and corruption in government touched upon a matter of public concern. *See O'Brien v. Town of Caledonia,* 748 F.2d 403, 407 (7th Cir.1984) (informing public of potential graft and corruption deserves "vigilant protection"); *Rookard v. Health and Hospitals Corp.,* 710 F.2d 41, 46 (2d Cir.1983) (exposing of corrupt and wasteful practices "obviously" matter of public concern). Next, Marohnic's speech in this case in no way hindered the operations of the Board. Rather, Marohnic's speech increased the Board's efficiency by helping to disclose the fraudulent altering of bills. Nor does any evidence indicate that the working environment at the Board was so intimate or of such an interpersonal nature that Marohnic's cooperation with the state investigation rendered him ineffective at performing his duties. *See Anderson v. Evans,* 660 F.2d 153, 158–59 (6th Cir.1981). Moreover, when an employee exposes unscrupulous behavior in the workplace, his interests are co-extensive with those of his employer; both want the organization to function in a proper manner. Since Marohnic's speech to the Kentucky Attorney General was of significant public concern and did not adversely affect the Board's operations, we hold that it is entitled to First Amendment protection. Thus, we proceed to consider the second element of Marohnic's *prima facie* case, namely, whether Walker made negative statements about Marohnic.

▇ At least one prospective employer indicated to Marohnic that a problem existed with the Board's recommendation; Terry Ward explicitly advised Marohnic to stop using the Board's recommendation. Also, a reasonable inference can be drawn that Walker affected Marohnic's employment opportunity at the Comprehensive Mental Health Center from Ms. Kwalick's statement that the Executive Director of the Comprehensive Mental Health Center was very close to Walker. Likewise, since the Board was Marohnic's only past employer, an inference can be drawn from Mr. Tillow's statement that a problem existed with Marohnic's employment record that he

was referring to the Board's recommendation. Finally, a juror could reason that if Walker made negative statements to Robert Craig, who was posing as a prospective employer, Walker gave similar statements to others upon inquiry. In our view, the foregoing evidence is more than sufficient to create an issue of material fact concerning whether Walker made negative statements about Marohnic to prospective employers.[3] Finally, we consider the last element of Marohnic's *prima facie* case, whether the protected speech was a substantial factor in Walker's giving of bad references.

■ We begin our analysis of this matter recognizing that summary judgment is particularly inappropriate when intent is at issue, because evidence of intent must generally be inferred from the surrounding facts and circumstances. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985); *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). The most probative evidence in this case pertaining to Walker's intent is a comparison of Marohnic's last employee evaluation completed by Walker and Walker's statements to Robert Craig. Walker completed an evaluation of Marohnic shortly before the Kentucky Attorney General's investigation in which he concluded that Marohnic was a "very capable administrator," had an analytical mind, thought systematically, worked hard, and "definitely" was an asset to the Board. In contrast, Walker informed Robert Craig that Marohnic had mediocre leadership qualities, was not a good administrator, was ineffective at getting along with others, and was immature. Obviously, some-

thing occurred between the time of the evaluation and the phone call with Craig to change Walker's opinion of Marohnic's abilities. The reason for Walker's change in attitude is, in our view, a classic question of fact for a jury to determine.[4] We hold, therefore, that an issue of material fact exists concerning Walker's motivation.

Since we hold that Marohnic's speech was protected by the First Amendment and that material issues of fact exist concerning both whether Walker made negative statements about Marohnic's qualifications and Walker's motivation for doing so, we reverse and remand this case for further proceedings.[5]

---

3. Marohnic also sought to introduce the expert testimony of Dr. Seymour Slavin who opined that based upon Marohnic's qualifications and the social work employment market Walker must have been giving negative feedback about Marohnic. Marohnic, however, did not file a transcript of Dr. Slavin's deposition until April 22, 1985, three days after the district court rendered its memorandum opinion granting summary judgment. Since Dr. Slavin's deposition was not properly filed with Marohnic's response to the summary judgment motion, *see* Fed.R. Civ.P. 56(c), and since the district court in all likelihood did not consider it, we refuse to consider it on appeal.

4. Of course, on remand, Walker and the Board will have an opportunity to establish that Walker would have given the same evaluation of Marohnic regardless of Marohnic's protected conduct. *Mount Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

5. The district court's holding that Marohnic had not established any damages does not provide an alternative basis for affirmance in this case in light of our recent decision in *Walje v. City of Winchester, Kentucky*, 773 F.2d 729, 731–32 (6th Cir.1985), which held that general damages may be presumed from a First Amendment violation.