78 F.3d 585
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Terry J. WILKINS, Plaintiff-Appellee,
v.
Donald E. JAKEWAY; Vincent Lombardi, and Robert Garber,
Defendants-Appellants.
 No. 94-4137.
 United States Court of Appeals, Sixth Circuit.
 Feb. 27, 1996.
 
 Before: JONES, DAUGHTREY and PHILLIPS*, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff, former chief of Ohio's Office of Community Services within the state Department of Development, sued three supervisors under 42 U.S.C. § 1983, alleging that he was unlawfully terminated because he exercised his right to free speech. Although the defendants sought qualified immunity on the ground that the plaintiff's speech was not clearly constitutionally protected, the district court refused to dismiss the case because it found that the plaintiff had pleaded facts which, if true, were sufficient to show that the speech was clearly protected. The defendants appeal the court's refusal to dismiss on grounds of immunity. For the reasons stated below, we affirm the district court's decision.
 
 I. Factual Background
 
 2
 The plaintiff, Terry J. Wilkins, was formerly employed by the Ohio Department of Development as the chief of the Office of Community Services, the agency responsible for monitoring agencies that receive federal and state funds to help the needy. Wilkins's job, in part, was to ensure that such agencies complied with state and federal regulations governing the receipt of funds.
 
 
 3
 In late 1993, Wilkins filed a civil rights action under 42 U.S.C. § 1983, alleging that he had been fired in retaliation for exercising his right to free speech. He claimed that he had reported agencies' misuse of state and federal funds to his supervisors and to the Ohio Inspector General, after observing that Department of Development employees knew about the misuse of funds and had done nothing. Wilkins alleged that Donald Jakeway, the Director of the Department of Development, Vincent Lombardi, the Assistant Director, and Roberta Garber, Wilkins's immediate supervisor, threatened Wilkins's welfare and his job after these reports, and that they and their agents and employees eventually disciplined and fired him for his reports. Wilkins further alleged that their actions were intentional, reckless, and malicious. Accompanying his claim under 42 U.S.C. § 1983 were state claims alleging violations of the state whistle blower statute and intentional infliction of emotional distress. Wilkins sued Jakeway and Lombardi in both their official and individual capacities, but Garber only in her individual capacity.
 
 
 4
 The defendants moved to dismiss or for summary judgment on the basis of qualified immunity, claiming that the allegations failed to show a violation of clearly established law. They also claimed that res judicata barred the plaintiff's Ohio "whistle blower" claim because Wilkins lost this claim before the Ohio State Personnel Board of Review. The defendants further claimed immunity from state claims under state law.
 
 
 5
 Wilkins then amended his complaint, detailing the events leading to his suit in order to withstand the qualified immunity defense. He alleged that after he became aware of the misuse of federal funds in violation of federal regulations, and of the fact that Department of Development employees had not corrected known violations, he reported the problems to the defendants and urged other program administrators, such as the Home Energy Assistance Program, to stop funding certain agencies. Wilkins alleged that he was harassed for reporting the violations and the Department's knowledge of them, that he received a written reprimand for discussing sensitive matters, and that he was reprimanded for discussing the matters with other Department administrators during staff meetings. Specifically, he noted that Garber scolded him at a staff meeting for telling other administrators to stop funding agencies. When his reports were met with inaction and hostility, he reported the matters to the Inspector General's office on several occasions, specifically mentioning the abuses of the Lima-Allen Community Action Committee. After reporting to the Inspector General, he alleged, Garber recommended to the other defendants that he be terminated. Wilkins insisted, however, that he never disrupted departmental operation, because his actions were not publicly disclosed until after his termination. Moreover, Wilkins alleged that he always followed the proper internal procedures to stop the funding, and that his actions led to the decertification of one agency after serious abuses were discovered. Finally, he alleged that he acted as a concerned public citizen, not because of a conflict with his supervisors.
 
 
 6
 The district court overruled the defendants' motion to dismiss the § 1983 claim, but dismissed the pendent claims without prejudice. It determined that qualified immunity was unavailable because Wilkins had adequately pleaded facts suggesting a violation of clearly established law. The defendants then timely answered the amended complaint and filed this appeal challenging the district court's failure to grant them immunity and dismiss the case.
 
 II. Analysis
 
 7
 A claim under 42 U.S.C. § 1983 alleging retaliatory discharge by a government official because of one's constitutionally protected speech entails proof of three elements. First, the plaintiff must prove that his speech was constitutionally protected because it addressed a matter of public concern. Second, the employee's interest as a citizen in his speech must not be outweighed by the government employer's interest in the efficiency of its office. Third, the protected speech must have been a substantial and motivating factor in the adverse employment decision. See Barnes v. McDowell, 848 F.2d 725, 732-3 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989).
 
 A. Sufficiency of the Complaint
 
 8
 Early on in this case, the parties became embroiled in a dispute over whether the plaintiff's amended complaint was sufficient to withstand the defendants' motion to dismiss. The defendants claimed that the complaint had to meet "heightened pleading standards" that require civil rights plaintiffs to allege specific facts in order to overcome government officials' immunity defense. The plaintiff contended that Fed.R.Civ.P. 8(a) requires only "a short and plain statement of the claim" and cited Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 113 S.Ct. 1160, 1161 (1993). There the Court held that in cases involving municipal liability, a "heightened pleading standard" need not be met and, indeed, that "it is impossible to square the 'heightened pleading standard' ... with the liberal system of 'notice pleading' set up by the Federal Rules." 113 S.Ct. at 1163. The Court noted, however, that it had "no occasion to consider whether [its] qualified immunity jurisprudence would require a heightened pleading in cases involving government officials." Id. at 1162.
 
 
 9
 If there were ever any question about the necessity of applying a "heightened pleading standard" to civil rights claims against governmental officials in the Sixth Circuit, however, that question has now been resolved in the recent case of Veney v. Hogan, 70 F.3d 917 (6th Cir.1995), decided shortly after this case was argued. There, the court declined to distinguish between a heightened pleading standard and "a zealous adherence to the directive of Federal Rule of Civil Procedure 8 that plaintiff plead the 'circumstances, occurrences, and events' in support of his claim," noting simply that "[t]he promise of early exit from a lawsuit offered by qualified immunity is an empty promise if the plaintiffs are routinely permitted to survive a motion to dismiss with mere 'notice' pleading." Id. at 922.
 
 
 10
 The district court believed that even if the "heightened pleading" requirement applied, the plaintiff had met that standard. We agree. The plaintiff's allegations were sufficient to enable the district court to determine whether, if the allegations were true, the plaintiff's "clearly established" rights were violated. First, the plaintiff had alleged facts indicating that he engaged in speech about a matter of public concern. Second, the allegations lead one to conclude that the plaintiff's interest in his speech outweighed the state's interest in the efficiency of its office. Both points are discussed more fully in Section B. Finally, in a case alleging retaliatory discharge because of constitutionally-protected speech, a plaintiff must be able to show that the speech was a substantial and motivating factor in the employment decision. See Barnes v. McDowell, 848 F.2d 725, 733 at n. 9 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989). In his amended complaint, Wilkins alleged that he received written and oral reprimands for "discussing sensitive matters," such as the misuse of funds with other staff administrators, and that his reports were met with hostility. Such allegations are specific enough to allege retaliatory intent under either pleading standard. Thus, the plaintiff's complaint is sufficient to withstand a motion to dismiss.
 
 B. The Immunity Issue
 
 11
 Government officials performing discretionary functions are immune from civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When inquiring into whether a right is "clearly established," a district court must look first to Supreme Court decisions, then to its court of appeals, and to itself. The decisions of other courts may prove a right to be clearly established if they "point unmistakably to the unconstitutionality of the conduct complained of and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable official that his conduct ... would be found wanting." See Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988).
 
 
 12
 In light of this case law, when a government employer seeks immunity from a claim that he unlawfully retaliated against an employee for exercising his right to free speech, the court must determine whether the employer infringed upon a "clearly established" right. The Supreme Court has held that a state "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983); Pickering v. Board of Education, 391 U.S. 563 (1967). All types of speech, however, are not constitutionally protected. To be constitutionally protected speech, first, the speech must relate to a matter of public concern. Connick, 461 U.S. at 146-7. As the Connick Court stated,
 
 
 13
 ... when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.
 
 
 14
 Id. Secondly, the employee's interest in speaking must not be outweighed by the state's interest in the effectiveness and efficiency of government services. Id. at 150-1. See also Williams v. Commonwealth of Kentucky, 24 F.3d 1526, 1534 (6th Cir.), cert. denied, 115 S.Ct. 358 (1994).
 
 
 15
 Courts determine whether speech relates to a matter of public concern by considering the content, form, and context of the speech in light of the whole record. Connick, 461 U.S. at 1489. In Connick, an assistant district attorney, dissatisfied with notice of her recent transfer, prepared a questionnaire for her colleagues about office morale, the need for a grievance committee, their confidence in their supervisors, and whether they felt pressured to work on political campaigns. After she was fired because her supervisor considered the questionnaire an act of insubordination, she sued under 42 U.S.C. § 1983, alleging that her termination violated her right to free speech. In its decision for the government employer, the Supreme Court found that most of the plaintiff's questions did not address matters of public concern. Although one could view the questionnaire's focus on office morale as pertinent to the efficiency of the prosecutor's office, and therefore, as a matter of public concern, the Court stated that
 
 
 16
 [t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case.
 
 
 17
 Connick, 461 U.S. at 148-9. The Court observed that the plaintiff was not trying to uncover wrongdoing in the office, "but rather to gather ammunition for another round of controversy with her superiors." Id. at 148. Hence, the speech was not a matter of public concern.
 
 
 18
 Similarly, in Brown v. City of Trenton, 867 F.2d 318 (6th Cir.1989), several police officers publicized a letter voicing grievances with the police chief, and were consequently disciplined. This court found that their speech was not constitutionally protected because it did not pertain to a matter of public concern. Brown interpreted Connick to suggest that if "the employee's personal interest qua employee predominates over any interest he might have as a member of the general public," then the matter is not of "public concern." The Brown court found "no hint ... of actual or potential wrongdoing or any breach of public trust," but only personnel grievances.
 
 
 19
 Moreover, in Thomson v. Scheid, 977 F.2d 1017, 1021 (6th Cir.1992), cert. denied, 113 S.Ct. 2341 (1993), this court found that the plaintiff had not been speaking on matters of public concern when, as a fraud investigator, he sent a report on a state official's possible fraud to the prosecutor, the Inspector General, and the Federal Bureau of Investigation. The plaintiff resigned from his position after the targeted state official made the plaintiff's promotion impossible. However, because the plaintiff's conversations with his superiors, who warned him to follow office policy, concerned office procedure, and because the plaintiff's superiors had permitted the reports he issued, the court found that the plaintiff was acting in the course of his employment rather than as a concerned citizen.[2] When the speech is part of one's job, therefore, the court does not consider its topic a matter of public concern.
 
 
 20
 As Brown hinted, matters of public concern include misuse of public money, unethical or illegal practices in an office, or corruption. For example, in Marohnic v. Walker, 800 F.2d 613 (6th Cir.1986) (per curiam), this court permitted a social worker for the state board of mental health to bring a § 1983 action against his former employer who had forced him to retire by harassing him after he cooperated with a Medicaid fraud investigation. This court found that Marohnic's speech concerning possible fraudulent billing was constitutionally protected. The court wrote that "[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law ... and seeing that public funds are not purloined." Id. at 616. This court has also found that speech charging corruption or discrimination is a matter of public concern, whereas speech complaining about incompetent management is not. Barnes v. McDowell, 848 F.2d 725, 734 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989). Moreover, in Williams, 24 F.3d at 1535, this court found that "criticizing political patronage practices and reporting allegedly politically corrupt activities of employees" is a matter of public concern.
 
 
 21
 In this case, Wilkins's speech relates to a matter of public concern. He reported his agency's failure to correct known misuse of government funds; the misuse of public money is certainly a matter of public concern, as this court noted in Marohnic. The pleadings, moreover, do not suggest that Wilkins was voicing his opinions in the context of any personnel grievance. The fact that his job entailed uncovering the misuse of public funds does, under Thomson's reasoning, suggest that Wilkins may not initially have been speaking as a public citizen. However, unlike the plaintiff in Thomson, Wilkins had not gotten his supervisors' approval for his reports to the Inspector General. Thus, he was acting outside of his job and as a public citizen.
 
 
 22
 Having determined that Wilkins's speech relates to a matter of public concern, we must next balance the plaintiff's interest in the speech against the government employer's interest in the effectiveness and efficiency of the office. Williams, 24 F.3d at 1536. In particular, when resolving the issue of qualified immunity, we must determine whether the defendant reasonably could have believed that the harm to office efficiency outweighed the plaintiff's interest in speaking freely. Id. We must consider the state's interest in terms of whether the speech interfered with the employee's duties, created discord among the staff, undermined discipline, or impaired the trust and loyalty required of confidential employees. Id. The Williams court, while acknowledging the imprecision of this balancing test, refused to find the test too unclear to strip government employers of immunity. For example, the Williams court found that the plaintiff's interest in her speech against political patronage obviously outweighed the office's interest in efficiency, and the court, therefore, refused to grant the defendants immunity. Moreover, when the court engaged in this balancing test in Marohnic, it found that the plaintiff's participation in the Medicaid fraud investigation did not hinder the board's efficient operation, but rather improved it. The court considered the exposure of fraud always to be in the government's interest. The court also noted that the working environment was not "so intimate or of such an interpersonal nature that Marohnic's cooperation ... rendered him ineffective...." 800 F.2d at 616. Thus, the essential consideration is the effect of the speech on the overall working environment in each case.
 
 III. Conclusion
 
 23
 In this case, the court must balance Wilkins's interest in his speech against Ohio's interest in the efficiency of its Department of Development. Given the importance of speaking out against misuse of public money, the plaintiff's interest is great. As we stated in Marohnic, "when an employee exposes unscrupulous behavior in the workplace, his interests are co-extensive with those of his employer; both want the organization to function in a proper manner." Marohnic, 800 F.2d at 616. The disruption that Wilkins caused by his comments at staff meetings clearly does not outweigh his interest in speaking on this subject.[3] The result of the balancing test in this case should be clear to any reasonable government employer.
 
 
 24
 For these reasons, we AFFIRM the order of the district court refusing to grant the defendants qualified immunity and remand the case for further proceedings.
 
 
 
 *
 The Honorable J. Dickson Phillips, Jr., United States Circuit Judge for the Fourth Circuit, sitting by designation
 
 
 [2]
 His only unapproved communication had been with the F.B.I., but because his employer did not know about that report until after the plaintiff resigned, the report could not have caused the alleged retaliation
 
 
 [3]
 Although the plaintiff pleaded that the efficiency of his office was not affected because his reports did not become public until after his termination, an office's efficiency can be affected by internal, as well as public, disagreements