RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0189P (6th Cir.)
File Name: 01a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHRISTINE BRANDENBURG,
   *Plaintiff-Appellant/*
    *Cross-Appellee,*

  *v.*

HOUSING AUTHORITY OF
IRVINE; PERRY MEADE,
Individually and as
Commissioner and
Chairperson of the Housing
Authority of Irvine; JANE
BRYANT, TOM WILLIAMS,
GLENN COX, and HUGH
HAMILTON, Individually and
as Commissioners of the
Housing Authority of Irvine,
   *Defendants-Appellees/*
    *Cross-Appellants.*

Nos. 99-6303/6396

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 98-00157—Karl S. Forester, Chief District Judge.

Argued: February 2, 2001

1

Decided and Filed:  June 6, 2001

Before:  DAUGHTREY and GILMAN, Çircuit Judges;
COLLIER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Anne Milton McMillin, GARDNER, EWING &
SOUZA, Louisville, Kentucky, for Appellant.  Jeffrey C.
Mando, ADAMS, STEPNER, WOLTERMANN & DUSING,
Covington, Kentucky, for Appellees.  **ON BRIEF:**  Anne M.
McMillin, Charles D. Ewing, GARDNER, EWING &
SOUZA, Louisville, Kentucky, Heidi B. Engel, Charles E.
Johnson, JOHNSON & ENGEL, Winchester, Kentucky, for
Appellant.    Jeffrey  C.  Mando,  ADAMS,  STEPNER,
WOLTERMANN & DUSING, Covington, Kentucky, for
Appellees.

_____

**OPINION**
_____

    CURTIS  L.  COLLIER,  District  Judge.    Christine
Brandenburg, former Executive Director of the Housing
Authority of Irvine, Kentucky, brought suit pursuant to
42 U.S.C. § 1983, claiming Defendants-Appellees Hugh
Hamilton, Glenn Cox, Tom Williams, Jane Bryant, Perry
Meade, and the Housing Authority (collectively "HAI")
violated her First and Fourteenth Amendment rights by
retaliating against her for engaging in protected speech.
Plaintiff-Appellant also alleged various state law violations.
Brandenburg and the HAI filed cross motions for summary
judgment on June 30, 1999.  In an order entered August 30,

_____

    [*] The Honorable Curtis L. Collier, United States District Judge for the
Eastern District of Tennessee, sitting by designation.

**III.  CONCLUSION**

    For all of the reasons set forth above, we **AFFIRM** the
district  court's  order  granting  summary  judgment  to
Defendants-Appellees on all of Plaintiff-Appellant's federal
claims and dismissing her state law claims without prejudice.

employment contract is not sufficient to invoke the substantive component of the Due Process Clause). Furthermore, the Supreme Court has held a cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). As a result, the district court correctly held the HAI was entitled to judgment as a matter of law with respect to Brandenburg's substantive due process claim.

### D.   State Law Claims

Finally, we conclude the district court appropriately dismissed without prejudice Brandenburg's claims under Kentucky state law. A district court's ruling declining supplemental jurisdiction will not be disturbed absent an abuse of discretion. *See Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279-80 (6th Cir. 2000). Brandenburg has provided this court with no law or facts to suggest such an abuse has occurred. In fact, the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment. *See United Mine Workers of America v. Gibbs*, 838 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well"). Accordingly, we will not second-guess the district court's decision to decline supplemental jurisdiction over the remaining state law claims in this case.

1999, the district court granted the HAI's motion for summary judgment and denied Brandenburg's motion, concluding that, although Brandenburg had engaged in protected speech, the HAI's interest in the efficient provision of public services outweighed her interest in speaking.

Both parties filed timely notices of appeal to this court. On appeal, Brandenburg argues the district court erred in granting the HAI's motion for summary judgment with respect to her federal claims, dismissing her state law claims, and denying her motion for summary judgment. The HAI appeals that part of the district court's order holding Brandenburg engaged in speech protected by the First Amendment. We have jurisdiction over both appeals pursuant to 28 U.S.C. § 1291. For the following reasons, we **AFFIRM** the decision of the district court.

### I.   BACKGROUND

### A.   Factual Background

The HAI, a government organization created by Kentucky law, is responsible for planning and management of public housing in Irvine, Kentucky. The United States Department of Housing and Urban Development ("HUD") subsidizes and regulates the HAI, which is governed by a Board of Directors ("Board"), each member of which is appointed by the Mayor of Irvine. Brandenburg worked for the HAI from 1981 until her resignation on July 15, 1998. At the time she resigned, Brandenburg was the Executive Director. According to her job description, Brandenburg acted as the "Chief Administrative Officer and Secretary-Treasurer of the Housing Authority" and was responsible "for the management of all Housing Authority activities as outlined by the Board of Commissioners, State and Federal Legislations [sic], and Department of Housing and Urban Development Regulations." In addition to management of the HAI's housing units, Brandenburg was charged with execution of "the decisions and policies of the Board of Commissioners."

She also kept the "Board of Commissioners informed in matters required for compliance" with applicable laws and regulations.

Brandenburg's position as Executive Director required her to work closely with the Board. In-fighting and dysfunction were therefore the seemingly inevitable consequences when tension began to manifest in 1992 between Plaintiff-Appellant and Orville Perry Meade, a local businessman who had recently joined the Board. The HAI alleges Brandenburg became confrontational, hostile, and would sometimes shout at Meade. During the course of this litigation, the HAI has also accused Brandenburg of various other improprieties, including the unauthorized purchase of a van for the HAI. Although Brandenburg denies all of these allegations and disputes the HAI's characterization of her relationship with the Board as "contentious," the record indicates, at the very least, Meade, who was appointed Chairman in 1994, was not satisfied with her performance.

For example, one of Brandenburg's duties as Secretary-Treasurer was taking minutes at every Board meeting and delivering them to each Board member before the next meeting. According to Meade, Brandenburg's minutes frequently contained errors and omitted the Board's instructions to her. Meade also claimed Brandenburg often failed to prepare the minutes in a timely fashion. Eventually, the Board removed Brandenburg as Secretary on January 16, 1996 and replaced her with another Board member.

Two controversies in particular led to the deterioration of Brandenburg's relationship with the Board in general and Meade individually. First, in 1994, shortly before Meade was appointed Chairman, Brandenburg became concerned about a possible conflict of interest on his part. Meade owned other apartments in town that, in Brandenburg's opinion, competed with HAI properties. He also owned a local hardware store with which the HAI occasionally did business. HUD quickly

We give a great deal of deference to the HAI's opinion in this matter. *See Connick*, 461 U.S. at 151-52 ("When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate"). Because Brandenburg's actions created actual tension in her relationship with the Board and posed a real threat to the HAI's effective functioning, we conclude the HAI's interest in effective operation outweighed Brandenburg's interest in free speech on these matters of public concern. As a result, because Brandenburg's speech fails to pass the second part of the *Pickering* test, her First Amendment claim fails as a matter of law, and the district court did not err in granting summary judgment to the HAI on this issue.

## C.   Substantive Due Process Claim

The district court was also correct in granting summary judgment to the HAI with respect to Brandenburg's claim for violation of her Fourteenth Amendment right to substantive due process. Brandenburg cites to *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554 (11th Cir. 1995), for the proposition a section 1983 claim alleging a violation of substantive due process based on the fundamental right to free speech is distinct from a section 1983 claim based directly on a violation of the First Amendment's free speech guarantee. In reality, *Beckwith* simply reaffirms the well-established rule that "almost all § 1983 claims rely on the substantive component of the Due Process Clause because it is through that vehicle that fundamental rights are incorporated against the states." *Id.* at 1562, *see also Grosjean v. American Press Co.*, 297 U.S. 233, 244-45 (1936).

Any claim for a violation of Brandenburg's substantive due process right to free speech is duplicative of her First Amendment retaliation claim, and she has not pointed to any other fundamental rights that have been violated by the HAI. *See Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990) (holding violation of an employee's property rights under an

In order to justify a restriction on speech of public concern by a public employee, plaintiff's speech must impair discipline by superiors, have a detrimental impact on close working relationships, undermine a legitimate goal or mission of the employer, impede the performance of the speaker's duties, or impair harmony among co-workers. The state bears the burden of showing a legitimate justification for discipline. As in *Rankin*, we look for evidence of the impact of the statement on the city's legitimate organizational interests.

934 F.2d at 730 (citations omitted). As Executive Director of the HAI, Brandenburg was an agent of the Board, charged with implementing the Board's policies and decisions, as well as keeping the Board informed of the day-to-day operations regarding the HAI's properties. Given the Board's reliance on the Executive Director to implement its directives and to provide continuing updates regarding the status of the properties, trust and a cooperative working relationship between the Board and Brandenburg were crucial elements in the performance of her duties. Damage to Brandenburg's relationship with the Board would have, predictably, inhibited the success of the HAI.

Moreland, the HAI's attorney, stated as much in his January 1998 letter to Brandenburg explaining the reprimand, when he said: "[T]he Executive Director should be supportive of Board policies as she is directly responsible to the Board and is the Board's employee. The Executive Director does not make policy, but should strive to carry out Board policy . . . This has not been the case." He went on to discuss the newspaper article at issue, saying: "This issue [of the conflict of interest] has long been laid to rest and reviving the issue serves no good purpose and was directly disparaging of the Board, its policies and members." Moreland's letter also explained how Brandenburg's statements to the newspaper had the potential, in the HAI's opinion, to damage the HAI's effectiveness.

waived the second conflict, and the HAI continued to periodically purchase materials from the store.

Brandenburg contacted Robert Kuhnle, the Chief Counsel for HUD in Louisville, regarding the possible conflict arising out of Meade's ownership of allegedly competing properties. Kuhnle's response was inconclusive, so Brandenburg then wrote a letter to the Kentucky Attorney General's office to ask for advice on the matter. Thomas Emerson, the Assistant Attorney General who responded to Brandenburg's request, concluded, based on the facts as presented by Brandenburg, a conflict of interest did exist, but he suggested the matter should be resolved by the Board. The Mayor and the Board did not receive notification of Brandenburg's communication with the Attorney General's office until late in 1994.

At the Mayor's request, Mike Moreland, the HAI's attorney, investigated Brandenburg's allegations in late October 1994. Around the same time, Brandenburg gave a copy of Emerson's letter to Mary Ann Russ, another HUD official, who concluded without further investigation that a conflict of interest mandating Meade's resignation did in fact exist. Moreland, however, determined no conflict existed and expressed this opinion in a letter to Russ. On April 15, 1995, the Board adopted Moreland's letter as the unanimous opinion of the HAI. Subsequently, Kuhnle responded to that letter, stating HUD was not of the opinion a conflict existed and that the Department would no longer involve itself in the matter.

The second major flashpoint in Brandenburg's relationship with the Board involved a proposed renovation and redesign of certain HAI public housing units. Early in 1996, the HAI decided to completely renovate the largest of the HAI housing sites at Hickory Hills. To fund the proposed renovation, the HAI had to apply for money through HUD's Comprehensive Improvement Assistance Program ("CIAP"). As part of the application process, several HUD officials visited Hickory Hills. HUD subsequently recommended the HAI should

demolish several of the buildings altogether instead of attempting a complete renovation. The HUD officials apparently believed the tightly compacted buildings were problematic for several reasons and had further concluded, because there were always several vacancies at Hickory Hills, demolition would displace few, if any, residents. Additionally, HUD recommended the HAI management office, which had been located at one of the smaller housing sites, be moved to Hickory Hills. Brandenburg openly opposed both suggestions. Her opposition to moving the management office was apparently related to an alleged shortage of parking at the Hickory Hills location. Nevertheless, the Board adopted HUD's proposals.

In September 1997, Beth Curlin, a reporter for *The Citizen Voice & Times*, Irvine's local newspaper, contacted Brandenburg about the Hickory Hills project. The two women discussed the demolition proposal, and Brandenburg expressed her displeasure with what HUD and the Board had planned for Hickory Hills. Brandenburg also provided Curlin with the correspondence related to Meade's alleged conflict of interest. Carlin then contacted Meade and gave him an opportunity to respond to Brandenburg's comments. At the next Board meeting, on September 23, 1997, Meade brought up his conversation with Curlin. The Board decided to convene a special meeting one-week later, following an arranged meeting with Meade, another Board member, and Curlin. During the September 30 meeting, the Board unanimously reprimanded Brandenburg "for a lack of cooperation and adversarial approach to the Board and its members." The Board further warned Brandenburg "any continuation of this adversarial approach may result in [her] suspension or dismissal."

Shortly after the reprimand, on October 9, 1997, *The Citizen Voice & Times* published an article with the headline: "Demolitions, a new beginning for Hickory Hills?" Above the article was a large picture of Brandenburg pointing to one of the buildings scheduled for demolition. Brandenburg had

retaliation, and that his constant irritating reminders of the money their unit was costing the department did not encompass matters of public concern because they did not address "actual or potential wrongdoing or any breach of public trust"). Generally, "[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law." *Marohnic v. Walker*, 800 F.2d 613 (6th Cir. 1986). Here, Brandenburg's speech concerned three subjects: 1) her criticism of the demolition project at Hickory Hills, and her sympathy for the residents who would be displaced, 2) her belief moving the management office from its previous location to the Hickory Hills site was a "waste of . . . money," and 3) her concerns about Meade's potential conflict of interest.

On one hand, Brandenburg's speech on each of these three issues did, in some respects, touch upon issues, such as whether the Board was acting in the community's best interests, that might be of some concern to the public at large. *See, e.g., Charvat v. Eastern Ohio Regional Wastewater Authority*, __ F.3d __, 2001 WL 336462, *9 (6th Cir. April 9, 2001) (holding that a supervisor's reporting of environmental violations by his wastewater treatment facility touched on matters of public concern). In many other respects, however, her speech, like many personal employee grievances, appeared to be motivated by self-interest and Brandenburg's dissatisfaction with the Board as her employer. In any event, we need not decide whether Brandenburg's speech touched upon matters of public concern because, even if her commentary satisfies the first part of the *Pickering* test, it fails the second as the HAI's interest in the efficient provision of public housing services outweighed Brandenburg's interest in speaking on these issues.

In *Meyers v. City of Cincinnati*, 934 F.2d 726 (6th Cir.1991), a panel of this Court outlined the considerations a court must take into account when utilizing the balancing test:

through its employees." *Perry v. McGinnis*, 209 F.3d 597, 604 (6th Cir. 2000). Only if an employee can satisfy both parts of this test, thus proving his or her speech was protected, should the court move on to determining whether the last two elements of a cause of action for retaliation — adverse action and motivation — are present.

In this case, the record is clear the Board took adverse action against Brandenburg, and the Board's actions were motivated primarily by Brandenburg's comments to the newspaper. The deciding issue is therefore whether Brandenburg's speech was protected by the First Amendment. In granting summary judgment on behalf of the HAI, the district court concluded Brandenburg's speech did touch upon matters of public concern, satisfying the first part of the *Pickering* test, but determined the HAI's interest in efficient administration of its public housing projects outweighed Brandenburg's interest in publicly commenting on Meade's alleged conflict of interest and her dissatisfaction with the HAI's plans for Hickory Hills. Accordingly, the district court held Brandenburg failed to prove an essential element of her First Amendment retaliation claim, and the HAI was entitled to judgment as a matter of law.

After conducting a *de novo* review of the district court's opinion, we conclude this case presents a close question on whether Brandenburg's speech touched upon matters of public concern. In general, speech involves matters of public concern when it involves "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). Such matters of public concern are to be contrasted with internal personnel disputes or complaints about an employer's performance. *See, e.g., Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1989) (holding a letter describing the perceptions of six disgruntled police patrolmen that their chief's allegiances were misplaced, that his decisions were inappropriately based on the fear of union

been quoted throughout the article as being critical of the demolition plans, and she referred to the move of the management office as "a waste of taxpayers [sic] money." The article also discussed Brandenburg's concern over Meade's alleged conflict of interest. Apparently, Brandenburg told the newspaper "[u]ntil Mr. Meade's last units were built we didn't have a lot of vacancies." Following the article's publication, at the very next Board meeting, the Board removed Brandenburg's authority to write checks on the HAI's behalf. The Board also increased the number of tasks it assigned to Brandenburg over the next six months, which she believed constituted harassment.

In a letter dated January 23, 1998, Moreland, the HAI's attorney, explained the basis of the Board's September 30, 1997 reprimand of Brandenburg to her attorney. Moreland stated the Board was of the opinion Brandenburg was hostile to the Board, failed to support its initiatives, and had attempted to publicly damage its reputation in the community. As evidence of these conclusions, Moreland cited to and quoted extensively from the October 9, 1997 newspaper article. In conclusion, Moreland warned Brandenburg's employment with the Board was in danger if she continued to fail in her obligations to be "supportive of [the Board] as any employee should be." Brandenburg took a leave of absence from March 30, 1998 until July 15, 1998, at which time she resigned.

## B.    Procedural Background

On April 22, 1998, Brandenburg filed suit against the HAI in the United States District Court for the Eastern District of Kentucky. Her complaint alleged a cause of action pursuant to 42 U.S.C. § 1983 for violation of her constitutional rights to free speech and substantive due process. Brandenburg and the HAI filed cross motions for summary judgment on June 30, 1999. The district court, on August 30, 1999, granted the HAI's motion for summary judgment and denied the motion

filed by Brandenburg. Both parties filed timely notices of appeal to this court.

## II. ANALYSIS

### A. Standard of Review

We review *de novo* the district court's grant of summary judgment. *See*, *e.g.*, *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B. First Amendment Claim

The district court did not err in granting the HAI's motion for summary judgment on Brandenburg's claim of retaliation in violation of her First Amendment right to freedom of speech. A plaintiff seeking to establish a case of retaliation for speech protected under the First Amendment must point to evidence sufficient to establish three elements: 1) the plaintiff engaged in constitutionally protected speech; 2) the plaintiff was subjected to adverse action or was deprived of some benefit, and 3) the protected speech was a "substantial" or a "motivating factor" in the adverse action. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (dealing with retaliatory termination of employment). In *Connick v. Meyers*, 461 U.S. 138, 140 (1983), the United States Supreme Court held "a public employee does not relinquish First Amendment rights to comment on matters of

public interest by virtue of public employment." The government may, however, exercise broader power to regulate the speech of its employees than over private citizens. *Id.* This difference is due to the fact the government's interest in the efficient provision of public services is substantially more significant when it is acting as employer rather than sovereign:

> The government's interest in achieving its goals as efficiently and effectively as possible is elevated from a relatively subordinate interest to a significant one when it acts as an employer. The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate.

*Waters v. Churchill*, 511 U.S. 661, 675 (1994).

To accommodate the competing interests of the citizen employee and the government employer, the Supreme Court has developed a two-part test for determining whether an employee's speech was protected under the First Amendment. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). As in other contexts, the issue of whether a plaintiff engaged in protected speech is a question of law for the court, *Connick*, 461 U.S. at 148, and the employee bears the burden of proving his or her actions were constitutionally protected in the particular circumstances. *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999). The first part of the test requires the court to ask whether the speech at issue addressed a matter of public concern. *See Rankin v. McPherson*, 483 U.S. 378, 385 (1987) ("The threshold question in applying this balancing test is whether [the employee's] speech may be 'fairly characterized as constituting speech on a matter of public concern.'") (citations omitted). Next, the court must decide whether "the interest of the employee as a citizen, in commenting on matters of public concern, outweighs the employer's interest in promoting the efficiency of the public services it performs